**UNITED STATES of America,**
**Plaintiff-Respondent,**

v.

**Philip DeLUCA, Defendant-Petitioner.**

Nos. 79 Civ. 6959 (LWP), 72 Cr. 638 (LWP).

United States District Court,
S. D. New York.

Dec. 30, 1981.

As Modified Jan. 12, 1982.

John S. Martin, Jr., U. S. Atty., S. D. New York by Mark F. Pomerantz, Asst. U. S. Atty., New York City, for plaintiff-respondent.

Robert Blossner, New York City, for defendant-petitioner.

PIERCE,* Circuit Judge.

## MEMORANDUM OPINION AND ORDER

On May 22, 1972, defendant Philip DeLuca and four co-defendants were indicted pursuant to 21 U.S.C. §§ 846, 963, 812, 841(a)(1) and 841(b)(1)(A) for conspiracy to violate the Federal Narcotics laws, as well as for substantive violations thereof. On October 16, 1972, after a lengthy hearing, this Court found defendant DeLuca mentally competent to stand trial. Defendant pleaded not guilty and asserted an insanity defense at trial. However, on November 18, 1972, after a 5½ week trial, the jury rejected this defense and found defendant and his four co-defendants guilty on two counts: conspiracy to import 120 kilograms

---

* The Honorable Lawrence W. Pierce, Circuit Judge for the Second Circuit, sitting by desig-   nation.

of heroin and possession thereof with intent to distribute. This conviction was subsequently affirmed on appeal. *See U.S. v. Barrera*, 486 F.2d 333 (2d Cir. 1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1944, 40 L.Ed.2d 291 (1974).

On January 10, 1973, this Court provisionally sentenced defendant, pursuant to 18 U.S.C. § 4208(b), to maximum sentences of 15 years imprisonment and a $25,000 fine on each of the two counts plus three years special parole. Defendant was then committed to Lewisburg Penitentiary for psychiatric evaluation. On or about May 4, 1973, the results of the study were sent to the Court, and after a post-trial competency hearing, held on June 27, 1973, this Court found defendant mentally incompetent to be sentenced. On June 28, 1973 the Court entered an order pursuant to 18 U.S.C. § 4246 committing the defendant to the custody of the Attorney General of the United States for treatment until such time when the defendant might be found mentally competent to appear before the Court for final sentencing.

Pursuant to this order the defendant was committed to the Medical Center for Federal Prisons at Springfield, Missouri on July 19, 1973. After evaluating the defendant, the Springfield medical staff reported its conclusion that defendant was a severe chronic schizophrenic who was, and likely would continue to be incompetent to be sentenced.

Following his filing a petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 in the Western District of Missouri, defendant was returned to the Metropolitan Correctional Center in New York City in November 1975. While there, defendant was examined, at the request of the prosecution, by a Dr. Portnow, who was also of the opinion that defendant continued to be incompetent to be sentenced.

Subsequently, on February 6, 1976, defendant was released on bail, without Government opposition and with the consent of his counsel, on condition that defendant present himself to New York State authorities for voluntary commitment to a state institution as a mental patient, and that defendant's attorney file periodic written reports on defendant's mental status with the Court. Later that month, defendant became an in-patient at the Rockland County Psychiatric Center. Defendant remained at that Center until February 24, 1977, when he was discharged to the custody of his brother, with treatment to be provided on a part-time out-patient basis at the Nyack Health Center. The Court consented to this arrangement at a conference held on March 11, 1977. Since that conference, defendant's attorney has continued to file with the Court the required reports on defendant's mental status. The most recent report, which was written by Dr. Alan J. Tuckman, and dated August 5, 1981, states that DeLuca is unlikely to become competent to be sentenced at any time in the future.[1]

On November 7, 1979, defendant's counsel filed a motion pursuant to 28 U.S.C. § 2255, seeking the entry of an order vacating the conviction previously entered against defendant and dismissing the indictment. Defendant's counsel asserts that the then-6½ year delay in finally sentencing defendant constitutes a violation of defendant's Sixth Amendment right to a speedy trial, and that the Court's continued jurisdiction over defendant for purposes of sentencing him constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. For the reasons stated hereinbelow defendant's motion pursuant to 28 U.S.C. § 2255 is denied. As discussed below, defendant DeLuca shall remain subject to the jurisdiction of the Court for imposition of final sentence for a definite period of time.

---

1. Dr. Tuckman's report contains an error on page 2. He states that DeLuca was initially found incompetent to stand trial. To the contrary, by order dated October 16, 1972 this Court found defendant DeLuca mentally competent to stand trial. A representative of the United States Attorney's office has represented to the Court that Dr. Tuckman has stated that this fact would in no way affect his conclusion as to DeLuca's prognosis at this time.

## I. *Defendant's Eighth Amendment Claims*

Section 4246 of Title 18 provides that "[w]henever the trial court shall determine [after arrest and prior to imposition of sentence] . . . that an accused is or was mentally incompetent, the court may commit the accused to the custody of the Attorney General or his authorized representative, until the accused shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law."

■ In *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), the Supreme Court stated that although § 4246 authorizes a commitment of potentially indefinite duration, the cases had imposed a rule of reasonableness on 18 U.S.C. §§ 4244 and 4246. Consequently, in the absence of a finding of dangerousness, a defendant committed thereunder can be held only for a "reasonable period of time" necessary to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future. 406 U.S. at 733, 92 S.Ct. at 1855. The situation at issue in *Jackson*, however, was entirely different from the one at bar. Defendant DeLuca has been convicted of an extremely serious offense, and that conviction was affirmed on appeal by the Second Circuit. *U.S. v. Barrera*, 486 F.2d 333 (2d Cir. 1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1944, 40 L.Ed.2d 291 (1974). Therefore, this Court is not faced with a situation involving "denial of due process inherent in 'holding pending criminal charges indefinitely over the head of one who will never have a chance to prove his innocence.'" 406 U.S. at 738, 92 S.Ct. at 1858. In addition, defendant DeLuca has not been confined since February 24, 1977, and presumably will not be confined during any period of continued incompetence. Thus, defendant has presented no cognizable claim of cruel and unusual punishment in violation of the Eighth Amendment.

## II. *Defendant's Sixth Amendment Claims*

Defendant correctly asserts that this Court's provisional sentence under 18 U.S.C. § 4208 was "wholly tentative," *U.S. v. Behrens*, 375 U.S. 162, 164–65, 84 S.Ct. 295, 296, 11 L.Ed.2d 224 (1963), and that defendant has never been finally sentenced.

The Supreme Court indeed has held that "[i]n the legal sense, a prosecution terminates only when sentence is imposed." *Bradley v. U.S.*, 410 U.S. 605, 609, 93 S.Ct. 1151, 1154, 35 L.Ed.2d 528 (1973). In addition, in *Pollard v. U.S.*, 352 U.S. 354, 361, 77 S.Ct. 481, 485, 1 L.Ed.2d 393 (1957), the Court assumed, without deciding, that sentencing is part of the trial for purposes of the Sixth Amendment. Numerous circuit courts have followed the Supreme Court's lead and made the same assumption, although some have read the Supreme Court's actual holding as being limited to cases in which delay was "purposeful or oppressive." *See, e.g., U.S. v. Campisi*, 583 F.2d 692, 694 (3d Cir. 1978); *U.S. v. Campbell*, 531 F.2d 1333, 1335 (5th Cir. 1976), *cert. denied*, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 121 (1977); *Juarez-Casares v. U.S.*, 496 F.2d 190, 192 (5th Cir. 1974); *Brooks v. U.S.*, 423 F.2d 1149 (8th Cir.), *cert. denied*, 400 U.S. 872, 91 S.Ct. 109, 27 L.Ed.2d 111 (1970); *U.S. v. Tortorello*, 391 F.2d 587 (2d Cir. 1968); *U.S. v. Grabina*, 309 F.2d 783 (2d Cir. 1962), *cert. denied*, 374 U.S. 836, 83 S.Ct. 1885, 10 L.Ed.2d 1057 (1963); *White v. Henderson*, 467 F.Supp. 96 (S.D.N.Y.1979). In addition, this Court is bound to observe the directive of Rule 32 (a)(1), Fed.R.Cr.P., that "[s]entence shall be imposed without unreasonable delay."

■ Thus, while the choice of time for sentencing is generally within the discretion of the trial judge, that discretion is not unlimited and sentence must be imposed without unreasonable delay. Therefore, assuming that Sixth Amendment speedy trial considerations do apply to the delay in imposing final sentence on defendant DeLuca, the Court must determine whether the delay in sentencing has been unreasonable in light of the peculiar circumstances of this particular case. In making this determination the Court must consider the four factors identified by the Supreme Court, and apply the balancing test enunciated in

*Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Thus, the Court will examine the length of the delay, the reason for the delay, the extent to which the defendant asserted his right to a speedy trial [sentence], and the prejudice, if any, that results to the defendant as a result of the delay. *See* 407 U.S. at 530, 92 S.Ct. at 2191.

In *Barker*, the Supreme Court stated that the length of delay is to some extent a triggering mechanism. 407 U.S. at 530, 92 S.Ct. at 2191. Here the delay, 8½ years, is, as in *Barker*, "extraordinary." 407 U.S. at 533, 92 S.Ct. at 2193 (*Barker* involved a delay of over five years). However, unlike in *Barker*, all of the delay in this case is attributable to good cause: throughout the entire period of delay defendant DeLuca's mental incompetence prevented the Court from finally sentencing him. *See Saddler v. U.S.*, 531 F.2d 83, 86 (2d Cir. 1976) ("[T]he court should not proceed with sentence unless the defendant is mentally competent. Otherwise his right of allocution, *Green v. U.S.*, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961), would be meaningless.") There has been no deliberate attempt by the Government to delay the trial. Nor has the Government been negligent in any respect.

■ There is still further indication that the defendant's incompetence is a sufficient reason to excuse the delay in sentencing. The Speedy Trial Act, 18 U.S.C. § 3161(h)(4) provides that "any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial" is excluded in computing the time within which an information or indictment must be filed, or in computing the time within which trial must commence. While the Speedy Trial Act does not apply to delays in imposing sentence, § 3161(h) reflects the views of the Congress as to which events constitute legitimate cause for delay in bringing a defendant to trial.

■ In *Barker*, the Supreme Court stated that in assessing prejudice to the defendant, three interests which the speedy trial right was meant to protect are at stake: first, the interest in preventing oppressive pretrial incarceration; second, the interest in minimizing the anxiety and concern of the defendant; and third, and most important, is the interest in limiting the possibility that the defense will be impaired. The first and third expressed concerns are clearly inapplicable to defendant DeLuca since he has already been tried and convicted. For the same reason, the concern with minimizing the anxiety and concern of the defendant is of less import. Defendant has known his status throughout the past 8½ years: that if he were to become competent he would be sentenced for the crime for which he stands convicted. While this may not have been a pleasant prospect it is not the type of anxiety and concern over pending unresolved charges which was the concern of the Supreme Court in *Barker* and other cases. *See, e.g., Klopfer v. North Carolina*, 386 U.S. 213, 221–22, 87 S.Ct. 988, 992–93, 18 L.Ed.2d 1 (1967). Finally, the fact that defendant's condition may have worsened over the period of delay in no way establishes that the delay caused any such deterioration. At a minimum, before the Court may find that defendant was prejudiced by delay there must be some showing of a causal relationship between that delay and the prejudice claimed. *Brooks v. U.S.*, 423 F.2d 1149, 1152 (8th Cir.), *cert. denied*, 400 U.S. 872, 91 S.Ct. 109, 27 L.Ed.2d 111 (1970).

The remaining factor, defendant's assertion of his right to be sentenced without delay, becomes moot under the facts of this case, since the defendant has not made any such demand and, in any event, the Court *could not* have imposed sentence on defendant at any time during the 8½ years between the imposition of the provisional sentence under 18 U.S.C. § 4208 and the present time.

■ For all of these reasons this Court finds that in balancing the enumerated factors, the delay in sentencing defendant De-Luca was reasonable and there is no basis to support a finding that defendant's right to a speedy trial [sentence] has been violated.

■ Finally, if the Court had sentenced defendant in spite of his incompetence the sentence would clearly have been invalid. *Saddler v. U.S.*, 531 F.2d 83, 86 (2d Cir. 1976); *see also Wojtowicz v. U.S.*, 550 F.2d 786, 790 n.5 (2d Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2938, 53 L.Ed.2d 1071 (1977). However, if this Court had undertaken to sentence the defendant, and if he had challenged the sentence as improper, his remedy would have been to seek a vacating of the sentence and a remand for proper sentencing—not a vacating of his conviction. *See Pollard v. U.S.*, 352 U.S. 354, 362, 77 S.Ct. 481, 486, 1 L.Ed.2d 393 (1957) ("Error in the course of a prosecution resulting in conviction calls for the correction of the error, not the release of the accused."); *U.S. v. Leavitt*, 478 F.2d 1101, 1103–04 (1st Cir. 1973); *Walsh v. U.S.*, 374 F.2d 421 (9th Cir. 1967). Likewise, defendant DeLuca's remedy in this case would be an expeditious imposition of sentence—not a vacating of his conviction.

### III. *Defendant's Future Exposure to Sentencing*

■ The Court does agree with the defendant that he may not be held in a delayed sentencing status indefinitely. Therefore, the Court is constrained to fashion a method of proceeding in relation to this defendant that establishes some temporal limits upon his exposure to sentencing, yet serves society's interest in ensuring that there be adequate redress with regard to those who are convicted of serious offenses.

Had defendant DeLuca been competent to be sentenced at the time the provisional sentence was imposed in January, 1973, this Court would have imposed a total sentence of 25 years plus three years special parole on the substantive count; that is, a sentence equivalent to that imposed upon the most culpable of DeLuca's co-defendants.[2] This sentence would reflect the fact that defendant DeLuca was arrested while in the act of unloading three footlockers which

contained 120 kilograms of nearly pure heroin. If defendant had been sentenced to 25 years imprisonment on the date on which his provisional sentence was imposed pursuant to 18 U.S.C. § 4208 (January 10, 1973), he would have completed serving one-third of his sentence, and first become eligible for parole after 100 months, or 8⅓ years, on May 10, 1981. *See* 18 U.S.C. § 4205(a). The crimes for which the defendant was convicted fall into the "Greatest I category" of offense. *See* 28 C.F.R. § 2.20; U.S. Parole Commission, Procedures Manual (March 1, 1981) at 111. Rated on the "Salient Factor Score" scale now being used by the U.S. Parole Commission, defendant would likely have been considered by the Commission to be a "very good" risk for parole, and likely would have been granted parole by the Commission on May 10, 1981. On that date he would have served well beyond the 40 to 52 months customarily served by prisoners considered "very good" parole risks before release for "Greatest I" offenses. Even if the defendant were rated in the "poor" parole risk category, the applicable customary time served, 78 to 100 months for "Greatest I" offenses, would have been completed by defendant on May 10, 1981. *See* 28 C.F.R. § 2.20; U.S. Parole Commission, Procedures Manual (March 1, 1981) at 111. Therefore, defendant would possibly have been granted parole on or about that date.

The decision, however, to grant parole is a discretionary one, and takes into account such factors as the defendant's institutional adjustment, the nature of the offense, and must reflect a determination "that release would not depreciate the seriousness of [the] offense or promote disrespect for the law." 28 C.F.R. § 2.18.

A limit to the Parole Commission's discretion is set out in 28 C.F.R. § 2.53, which provides that a prisoner serving a sentence of more than five years must be released after completion of two-thirds of his total

---

**2.** Defendant DeLuca's co-defendants, Barrera, Bornsztejn, and Pinto were each sentenced to consecutive terms of imprisonment of 15 years on the conspiracy count and ten years on the

substantive count, and special parole terms of three years. In addition, Barrera and Bornsztejn were each fined a total of $50,000.

sentence unless the Commission finds that there is a reasonable probability that the prisoner will commit another crime or that the prisoner has frequently or seriously violated the rules of the institution. Thus, in the absence of such findings, defendant De-Luca would have to be released on or before September 10, 1989, after serving two-thirds of his sentence.

Taking into account the large quantity and high quality of the narcotics involved in this case and the fact that the defendant was confined for a total of only four years: incarcerated in the federal system for three years and then as a voluntary in-patient at Rockland County Psychiatric Center for one additional year, this Court finds that release on May 10, 1981 would have, and termination of its jurisdiction over defendant DeLuca at this time *would*, "depreciate the seriousness of [defendant's] offense [and] promote disrespect for the law."

In any event, even if defendant DeLuca had been finally sentenced on January 10, 1973 and paroled on May 10, 1981 he would have been subject to the standard conditions of parole, which are set forth in 28 C.F.R. § 2.40(a). Additional conditions of parole, including residence or participation in a residential treatment program, or mental health treatment, could have been imposed pursuant to 28 C.F.R. §§ 2.40(b), (c), and (d). *See also* U.S. Parole Commission, Procedures Manual (March 1, 1981), § 117 at 30–31. This parole would likely have been for a period of five years, or until May 10, 1986, when, absent a finding that there was a likelihood that the parolee would again engage in criminal conduct, termination would be mandated under 18 U.S.C. § 4211(c)(1). Upon termination of this five year period, defendant would commence serving the three year special parole term which this Court would have imposed.

In light of the above, this Court holds that defendant DeLuca shall remain subject to the jurisdiction of this Court for purposes of sentencing, should he become competent to be sentenced, until May 10, 1989, that is, until such time as he would have served nearly two-thirds of the sentence which this Court would have finally imposed on January 10, 1973, had defendant been competent at that time.

For the foregoing reasons, defendant's motion to vacate the judgment of conviction and dismiss the indictment against him pursuant to 28 U.S.C. § 2255 is denied. Defendant DeLuca will remain subject to the jurisdiction of this Court for the purposes of sentencing until May 10, 1989. Defendant's attorney is directed to continue to furnish psychiatric reports to the Court, the Probation Department, and the United States Attorney (SDNY) as to the defendant's mental condition on a yearly basis.

SO ORDERED.