**UNITED STATES of America,**
**Appellee,**

v.

**Ewan BRYCE, Defendant–Appellant,**

**Darren Johnson, Defendant.**

**Docket No. 01–1142.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 28, 2002.

Filed April 22, 2002.

David A. Ring, Assistant United States Attorney, Hartford, Connecticut (John A. Danaher III, United States Attorney for the District of Connecticut, New Haven Connecticut, on the brief), for Appellee.

John R. Williams, New Haven, Connecticut, for Defendant–Appellant.

Before: KEARSE, JACOBS, and KEITH * Circuit Judges.

KEITH, Circuit Judge.

Ewan Bryce, the defendant-appellant, appeals the district court's resentencing following his initial conviction on two narcotics trafficking charges and successful appeal of one of these charges. On the defendant's first appeal, this Court vacated one of the two charges for which defendant was convicted and remanded to the district court with general instructions that the defendant be resentenced. For the reasons set forth below, we **AFFIRM** the new sentence imposed by the district court.

## I. BACKGROUND

In December 1997, a federal grand jury in Connecticut returned a two-count indictment charging the defendant with (i) conspiracy to distribute more than five kilo-

---

* The Honorable Damon J. Keith of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

grams of cocaine, in violation of 21 U.S.C. § 846 ("Count 1"), and (ii) possession with intent to distribute and distribution of more than five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) ("Count 2").

The defendant was released on bond and trial was scheduled to commence in mid-April, 1998. On March 15, 1998, a confidential informant, Jermaine Fitzpatrick ("Fitzpatrick"), who had assisted in the investigation of the case was murdered. The defendant's drug trial went forward as scheduled and resulted in his conviction on both counts. In August 1998, the district court sentenced the defendant on each count to 124 months in prison followed by supervised release for five years, the sentences to run concurrently. The district court also ordered the defendant to pay a special assessment of $100 on each count.

The defendant appealed both counts of his conviction. In an opinion issued in August 1999, this Court affirmed the judgment on the conspiracy count, Count 1, reversed for insufficient evidence the judgment on the substantive count, Count 2, and remanded the case for resentencing. *See United States v. Bryce*, 208 F.3d 346 (2d Cir.1999). The written opinion stated that the case was remanded for "resentencing." *Id.* at 356. In the separate mandate from this Court issued the same day as the opinion, we ordered the district court to conduct "further proceedings in accordance with the opinion of this court."

While defendant's appeal of his two-count conviction was pending, he was indicted for murdering Fitzpatrick with intent to (i) prevent him from testifying at the drug trial, 18 U.S.C. § 1512(a)(1)(A), and (ii) retaliate against him for providing information to law enforcement officers, 18 U.S.C. § 1513(a)(1)(A). The murder case went to trial, with the defendant taking the stand during his trial. On the stand, Bryce admitted his involvement in cocaine trafficking (which he had denied during the drug case trial), but denied killing Fitzpatrick. The jury acquitted Bryce on the murder charge. Subsequently, pursuant to this Court's August 24, 1999 decision, the defendant appeared before the district court judge for resentencing on the conviction stemming from the drug case trial.

Before resentencing, both sides submitted papers seeking a new sentence on the surviving count of conviction, Count 1. The government asked for a substantial increase in the sentence, arguing that the defendant killed Fitzpatrick to prevent him from testifying in the drug case brought by the government against the defendant. The defendant, on the other hand, sought a sentence reduction on the grounds that his testimony in the murder case entitled him to credit for acceptance of responsibility under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), and that he had suffered extraordinary emotional distress as a result of being charged with a capital offense he did not commit.

Neither side's papers specifically addressed whether the new sentence on Count 1 could be altered if the sentences previously imposed on the two counts were not interrelated. Accordingly, a hearing was scheduled pending briefing on the issue. After the hearing, the district court sentenced the defendant *de novo*, and increased the offense level due to the district court judge's finding that the defendant had murdered Fitzpatrick to thwart prosecution of his drug case. Upon resentencing, the district court judge imposed the statutorily authorized maximum sentence of twenty years.

## II. DISCUSSION

### a. The Appellate Court's Mandate

We review the district court's decision *de novo, Irby v. New York City Transit*

*Authority,* 262 F.3d 412 (2d Cir.2001), because the defendant's appeal challenges the district court's rulings of law. On appeal, the defendant argues that this Court's mandate after his initial appeal from the drug convictions precluded the district court's *de novo* resentencing on the surviving conspiracy count. We disagree.

██ We find the defendant's interpretation of this Court's mandate, although plausible, to be unpersuasive. The mandate rule "compels compliance on remand with the dictates of the superior court and foreclose relitigation of issues expressly or *impliedly* decided by the appellate court." *United States v. Zvi,* 242 F.3d 89, 95 (2d Cir.2001) (quoting *United States v. Bell,* 5 F.3d 64, 66 (4th Cir.1993)). "Likewise, where an issue [is] ripe for review at the time of the initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." *Id.* "To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specifics of the dictates of the remand order as well as the broader 'spirit of the mandate.' " *Id.* (quoting *United States v. Kikumura,* 947 F.2d 72,76 (3d Cir.1991)). In this circuit, we have adopted a mandate rule that permits, if it does not require, *de novo* sentencing unless the mandate specifically limits the scope of the resentencing. *See United States v. Atehortva,* 69 F.3d 679, 685 (2d Cir.1995).

██ Our mandate was open. The defendant argues nevertheless that we were obliged to limit the scope of our mandate as to Count I because that count was untouched by the appellate court and because the two sentences were not interrelated. In support of this proposition, the defendant cites *United States v. Pisani,* 787 F.2d 71 (2d Cir.1986), a pre-Guidelines case.

In *Pisani,* this Court refused to remand the case for resentencing because the vacated counts of conviction were unrelated to the count that survived. *Id.* at 75–76. We have acknowledged that *Pisani* remains good law under the Guidelines. *See, e.g., United States v. Vasquez,* 85 F.3d 59, 60 (2d Cir.1996). However, its application to Guidelines cases is qualified by the Guidelines principle that "[e]ven where the appellate court remands a case with specific limiting instructions, such a mandate does not 'preclude' a departure based on intervening circumstances." *United States v. Bryson,* 229 F.3d 425, 426 (2d Cir.2000) (*per curiam* ) ("[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing."); *see also Werber v. United States,* 149 F.3d 172, 178 (2d Cir.1998) (requiring the court "to resentence in light of circumstances as they [stand] at the time of his resentencing").

The principle that a defendant is sentenced as he stands before the court derives partly from the Guidelines requirement that relevant conduct *must* be taken into account in setting a defendant's Guidelines range. *See* U.S.S.G. § 1B1.3(a).[1] Because intervening circum-

---

1. Section 1B1.3 of the Guidelines defines "relevant conduct" to include:

   (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or wilfully caused by the defendant; and

   (B) in the case of jointly undertaken criminal activity ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity. U.S.S.G § 1B1.3(a).

   Any conduct that is "relevant" to the instant offense under § 1B1.3 must be "taken

stances that qualify as relevant conduct are not considered by the appellate court, it is the role of the sentencing court to weigh them on remand. Thus, in Guidelines cases the district court may enhance even interrelated sentences if the departure from the prior sentence is predicated on relevant conduct.

Here, the record is replete with facts that demonstrate that the district court assessed new evidence upon which it rested its decision to resentence the defendant *de novo*. At the time of the initial sentencing, the government had intimated without alleging that Bryce had killed a government witness, Jermaine Fitzpatrick ("Fitzpatrick"), in an attempt to prevent him from testifying. However, the government did not have the means of proving that the defendant had killed Fitzpatrick for that purpose, because the key witness to the murder did not come forward until after the first sentence. As a result of this development, the government was able to elicit new information concerning the defendant's relevant conduct that supported a sentence increase under the Guidelines. *See United States v. Watts*, 519 U.S. 148, 154–157, 117 S.Ct. 633, 136 L.Ed.2d 554 (holding that a court may consider conduct underlying the acquitted charge as long as the conduct was proved by a preponderance of the evidence); *see also United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 92 (2d Cir.1999).

The defendant argues that because the facts regarding Fitzpartick's murder existed before the first sentencing hearing, the district court should either have used this information during the first sentencing hearing or not at all. However, new evidence that clearly implicates a defendant in a crime can also be considered as the intervening circumstances that a judge must consider during resentencing, notwithstanding that the suspicion existed earlier. In this case, further investigation and court proceedings provided new facts regarding the defendant's conduct which the district court properly determined to be relevant in accounting for defendant's increased sentence. Because the district court was presented with new evidence that it was obliged to consider, we find that the present case falls outside the ambit of *Pisani*.

The defendant in *Pisani* also presented a double jeopardy argument, which we were not required to reach, because we invalidated the enhanced remand sentence on other grounds. *Pisani*, 787 F.2d at 76 n. 8 ("Since we conclude that consideration of an increased sentence is not warranted, we do not reach Pisani's contention that an *increased sentence would violate the Double Jeopardy Clause.*") (emphasis added). Because we find that consideration of an increased sentence *is* warranted for Bryce, we must reach the constitutional question.

"The Double Jeopardy Clause generally prohibits courts from enhancing a defendant's sentence once the defendant had developed a legitimate 'expectation of finality in the original sentence.'" *United States v. Triestman*, 178 F.3d 624, 630 (2d Cir.1999) (quoting *United States v. DiFrancesco*, 449 U.S. 117, 139, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980)). Because "a sentence does not have the qualities of constitutional finality that attend an acquittal" a district court is sometimes permitted to increase a sentence even after appeal. *DiFrancesco*, 449 U.S. at 134, 137,

into account in the determination of the offense level for the instant offense." Section 1B1.3 uses mandatory language: The instant offense's base offense level, specific offense characteristic, and adjustments all *"shall* be determined on the basis of" the conduct § 1B1.3 defines as relevant. U.S.S.G. § 1B1.3(a) (emphasis added).

101 S.Ct. 426; *see also North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

It cannot be said that the resentencing in this case upset any expectation of finality to which Bryce was entitled. On the original appeal, Bryce sought reversal or vacatur of both offenses of conviction, arguing that (i) the convictions relied on insufficient evidence, (ii) the district court made erroneous evidentiary rulings, and (iii) the government improperly excluded a juror for racially-motivated reasons. Appellate success on the latter two arguments would have resulted in a vacatur of the judgment and a retrial, after which (if convicted) Bryce would have been sentenced as he *then* stood before the court. *See Pearce*, 395 U.S. at 723, 89 S.Ct. 2072 (holding that a defendant is resentenced *de novo* after retrial); *Pennsylvania v. Goldhammer*, 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985) (holding that there is no qualitative difference between resentencing after vacatur and resentencing following retrial); *Bryson*, 229 F.3d at 426. Bryce therefore could not have pursued the first appeal with any settled expectation that his sentence would not be increased.[2]

As it happened, Bryce challenged his conviction and sentence on appeal and did so until the date of the resentencing. Because Bryce exposed himself to the risk of an outcome no different than what in fact happened, he had no expectation of finality and can make no claim that he was "given a second punishment in a proceeding initiated against his will." *United States v. Coke*, 404 F.2d 836, 841 (2d Cir.1968) (*en banc*).

### b. Estoppel

We do not find defendant's estoppel argument persuasive. The defendant argues that the government was judicially estopped from seeking an increased sentence on remand. We find that the government was not estopped from seeking an increased sentence when it sought a rehearing after the initial appeal. In September 1999, the government sought reargument for this Circuit's order reversing Count 2 of defendant's conviction. The defendant claims that the government made it a condition of its request for reargument that it would have no impact on his sentence as to Count 1. Speaking to the delay of finalizing defendant's sentence if granted a reargument, the government stated:

> This delay will not prejudice the defendant in any significant way, given that the Court originally imposed concurrent sentences for each of the two counts of conviction. Because the Court of Appeals affirmed one of the two convictions, the reversal of the other one will only result in the elimination of one of the $100 special assessments; it should not result in a reduced sentence. This is particularly true given that, for the remaining count of the conviction, the defendant is subject to a ten year mandatory minimum.

Nothing contained in the statement remotely suggests a promise that the government would not seek an increased sentence if there were intervening circumstances bearing on the defendant's criminality. In fact, as is patently clear,

---

**2.** We express no view as to the soundness of the resentencing if on the original appeal Bryce had (i) not challenged the conspiracy count, or (ii) raised only challenges that would result (if successful) in reversals with prejudice. *Cf. McClain v. United States, 676*

F.2d 915, 918 (2d Cir.1982) (holding that in a case involving non-interlocking sentences "imposition of a higher term on resentencing would pose a more difficult double-jeopardy problem than does this case").

the statement is silent on the government's position regarding intervening circumstances bearing on the defendant's criminality. As such, defendant's reliance thereon for its estoppel argument is misplaced.

### c. The Speedy Trial Act and the Sixth Amendment

■ We hold that the in the present case, the intervening period of twenty-three months from the time of defendant's first appeal to the final sentencing hearing did not constitute an unreasonable delay under the Speedy Trial Act. Defendant argues that the delay in imposing his final sentence violated his rights under the Speedy Trial Act and the Sixth Amendment. We find this argument to be without merit.

The Speedy Trial Act provides that a defendant shall be afforded a trial within seventy days of indictment, first appearance, or after remand from an appeal. 18 U.S.C. § 3161(c)(1) & (e). The Act makes no mention of sentencing, and creates no right to a "speedy sentencing". Courts, however, acknowledge that the Sixth Amendment guarantee to a speedy trial applies to sentencing. *See Pollard v. United States*, 352 U.S. 354, 356, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); *United States v. Tortorello*, 391 F.2d 587, 588 (2d Cir. 1968). The right requires a "court to determine whether [a] delay has been unreasonable in light of the peculiar circumstances of the case." *United States v. DeLuca*, 529 F.Supp. 351, 354 (S.D.N.Y. 1981).

We find that defendant's right to a speedy sentencing was not violated.[3] First, the Speedy Trial act, by its plain terms, does not apply to sentencing. Second, the delay in sentencing was not unreasonable "in light of the peculiar circumstances of [this] case." The defendant calculated the twenty-three month period from the day of this Circuit's first opinion in this case. After that date, this Circuit entertained a rehearing motion by the government, the district court conducted a new sentencing hearing, and the district court held an additional hearing on the mandate issue. All of these proceedings required further briefing by the parties. Given that this Circuit has found delays in sentencing longer than twenty-three months reasonable, we find that the delay here was also reasonable. *See Tortorello*, 391 F.2d at 589 (two and one-half year delay reasonable, despite defendant's request for immediate sentencing); *DeLuca*, 529 F.Supp. at 351–355. This is especially true considering that the record does not suggest that the government sought to intentionally create a delay.

### d. Due Process

■ Finally, we hold that, on remand, the district court did not violate the defendant's due process rights by increasing his sentence after his successful appeal. Due process of law "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Pearce*, 395 U.S. at 725, 89 S.Ct. 2072. When a court increases a defendant's sentence after appeal without new evidence or information, a presumption of vindictiveness applies that can be overcome by objective information in the record justifying the increased sentence. *United States v. Goodwin*, 457 U.S. 368, 374, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). This rule "is a prophylactic one, addressed more to protect future litigants who appeal than to the injustice done in

---

**3.** Also we note that prior to this appeal, the defendant never once objected to the delay in sentencing.

the actual case. Tolerance of a court's vindictiveness might 'chill' a defendant's right to seek an appeal of her sentence." *United States v. Campbell*, 106 F.3d 64, 67 (5th Cir.1997). "[A] sentencing authority may justify an increased sentence by affirmatively identifying relevant *conduct or events* that occurred subsequent to the original sentencing proceeding." *Wasman v. United States*, 468 U.S. 559, 572, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) (emphasis added).

In the instant case, the district court's increased sentence satisfied the standards, articulated in *Pearce* and refined by *Wasman*, that protect against vindictive sentencing. It is clear that, on remand, the district court predicated its increased sentence on events which occurred subsequent to the original sentencing proceeding. Here, as a result of a new witness coming forward after the original sentencing proceeding, the government was able to elicit information implicating the defendant in Fitzpatrick's murder. The district court found, by a preponderance of the evidence, that the defendant murdered Fitzpatrick before the first sentencing hearing. *Wasman* clearly establishes that the "subsequent actions or events" required by *Pearce* to overcome a presumption of vindictiveness need not be actions undertaken by the defendant. In *Wasman*, the Supreme Court upheld a sentence after appeal that accounted for a felony conviction entered between the two sentencing hearings. The Supreme Court did so despite the defendant's argument that the events of the intervening felony occurred before the first sentencing hearing. *Wasman*, 468 U.S. at 562, 104 S.Ct. 3217.

In addition, the district court's increased sentence did not violate the supervisory rules we set forth in *Coke*. In *Coke*, we held that because "the prospect of an increased sentence on retrial is sufficiently threatening to the assertion of defendants'

rights," increased sentences should be strictly limited "to cases truly calling for it". · *Coke*, 404 F.2d at 845. Such limited circumstances include when the defendant engages in anti-social conduct following the initial sentence or when the defendant's criminal activities are shown to be more offensive at the second trial than was thought at the time of the first sentencing. *Id.* at 842–43. The facts of this case fall within the second exception to *Coke's* general disfavor of increased sentences upon resentencing. Here, the district court's finding, by a preponderance of the evidence, that the defendant committed murder sufficiently demonstrated to the district court that defendant's criminal activities were more offensive than previously thought and thus supported the district court's imposition of an increased sentence.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the new sentence imposed by the district court.