14-1452-cr(L)
*United States v. Tanaka*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of March, two thousand sixteen.

PRESENT:  RALPH K. WINTER,
          DENNY CHIN,
          SUSAN L. CARNEY,
                    *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                    *Appellee*,

                    v.                                    14-1452-cr(L)
                                                          14-1453-cr(Con)

GARY ALAN TANAKA, ALBERTO WILLIAM VILAR, AKA
Albert Vilar,

                    *Defendants-Appellants*,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| FOR APPELLEE UNITED STATES OF AMERICA: | JOSHUA A. NAFTALIS, Rebekah A. Donaleski, Karl Metzner, Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York. |

FOR DEFENDANT-APPELLANT    BARRY D. LEIWANT, Appeals Bureau,
GARY ALAN TANAKA:          Federal Defenders of New York, Inc., New
                           York, New York.

FOR DEFENDANT-APPELLANT    MICHAEL K. BACHRACH, New York, New
ALBERTO WILLIAM VILAR:     York.

Appeal from the United States District Court for the Southern District of
New York (Sullivan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**,
except that the fines imposed are **VACATED**, and the case is **REMANDED**.

This case returns to us following a resentencing conducted pursuant to
our remand order in *United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013). Defendants-
appellants Gary Alan Tanaka and Alberto William Vilar were convicted, following a
jury trial, of various offenses relating to securities fraud. In 2010, the district court
sentenced Tanaka to 60 months' imprisonment, Vilar to 108 months' imprisonment, and
both to a $25,000 fine. On April 24, 2014, the district court resentenced Tanaka to 72
months' imprisonment, Vilar to 120 months' imprisonment, and both to a $10 million
fine. The district court also imposed forfeiture and restitution against both defendants
totaling over $47 million, to be paid jointly and severally. Both defendants now appeal
that resentencing. We assume the parties' familiarity with the underlying facts and

procedural history of the case, much of which is recited in our opinion in *Vilar*, 728 F.3d 62, as well as the issues on appeal.

We address in turn defendants' claims that (1) the district court was vindictive in the resentencing and (2) the fines were unreasonable.

**1.** *Judicial Vindictiveness*

Tanaka and Vilar first contend that the district court violated their due process rights when it increased each of their terms of imprisonment by 12 months and their fines from $25,000 to $10 million.

The Due Process Clause "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969). The Supreme Court has since reiterated that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)); *see Bordenkircher*, 434 U.S. at 363 ("[F]or an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 33 n.20 (1973))).

If there is a reasonable likelihood that the district court punished the defendant for successfully appealing or otherwise exercising his legal rights, we presume that the sentence is vindictive. *See United States v. Singletary*, 458 F.3d 72, 76

(2d Cir. 2006). That presumption may be rebutted, however, "based upon objective information concerning identifiable conduct" that "affirmatively" appears in the record. *Pearce*, 395 U.S. at 726; *see Singletary*, 458 F.3d at 77.

There is "no reasonable likelihood of vindictiveness where the sentencing court 'predicated its increased sentence on events which occurred subsequent to the original sentencing proceeding.'" *United States v. Weingarten*, 713 F.3d 704, 714 (2d Cir. 2013) (quoting *United States v. Bryce*, 287 F.3d 249, 257 (2d Cir. 2002)). Such events may include a defendant's "anti-social conduct following the initial sentence." *Bryce*, 287 F.3d at 257; *accord United States v. Coke*, 404 F.2d 836, 842 (2d Cir. 1968) (*en banc*). If no reasonable likelihood of vindictiveness exists, "the defendant must affirmatively prove actual vindictiveness." *Wasman v. United States*, 468 U.S. 559, 569 (1984); *see, e.g.*, *Weingarten*, 713 F.3d at 715.

Tanaka and Vilar argue that the district court sentenced them on the basis of their successful appeal, *see Vilar*, 729 F.3d 62, and their defense of a related civil enforcement action brought by the government, over which this district judge also presided, *see SEC v. Amerindo Inv. Advisors Inc.*, No. 05 Civ. 5231 (S.D.N.Y.). Of course, if the district court in fact sentenced Tanaka and Vilar on either of those bases, their due process rights would have been violated. *See Goodwin*, 457 U.S. at 372.

On this record, however, we find that there was no reasonable likelihood of vindictiveness. As the district court made clear at resentencing:

> I certainly can't hold it against the defendants that they appealed and I certainly don't. They have -- you have the right to appeal. You have the right to defend yourselves in civil cases. You have the right to protect your legal rights. Of course you do.

Vilar App. 312. It then went on to conclude that Tanaka and Vilar had engaged in "anti-social conduct following the initial sentence." *Id.*

Notably, at the initial sentencing, the district court imposed sentences well below the Guidelines range of 210 to 262 months, in part because it concluded, based on defendants' affirmations, that they wanted to help their investors be repaid. Vilar told the district court, "I don't know where the government gets the idea that I am not responsible or remorseful." Feb. 5, 2010 Sent. Tr. 57. He went on to explain that he "deeply regret[ted] any inconvenience that our 14,000 clients might have suffered" and that "[f]ortunately there are only five victims, and [he] would be 95 percent confident that they will be paid and that they will not have lost anything." *Id.* at 60. Likewise, Tanaka's attorney described how, post-conviction, Tanaka had engaged others to help find and value assets to repay investors and "spearheaded the effort to get the Mayers [a family of investors] paid." *Id.* at 108. Tanaka also apologized -- "I am sorry for what has happened." *Id.* at 144. He attested that his "objective mind is to restore [the] clients' capital," that he "would like to get into trying my best to restore client assets," and that he would "hope [he] get[s] the opportunity in the near term again to restore these client assets, because [he] do[es] feel deeply responsible." *Id.* at 141-42, 144.

At resentencing, the district court discussed at length how, in stark contrast, defendants' post-sentencing conduct "seemed designed at every step to slow down the distribution process and to punish the investors." Vilar App. 313. The district court noted instances where the defendants obstructed or refused to consent to distributions, opposed the receiver, and refused hardship payouts to certain victims who were in dire financial straits.[1] Further, the district court referenced two letters that Tanaka and Vilar sent to investors where they claimed that they "did not perpetrate a 'fraud,' to leave hapless 'victims' in [their] wake." Id. at 332. The letters also incited investors to oppose the receiver and requested that, "[i]n any communication with [the receiver], [they should] ask him directly" why he was not taking certain actions. Id. at 335. In the district court's words, after the initial sentencing, Tanaka and Vilar "reneg[ed] [on] the promises" they had made then to obtain lighter sentences. Id. at 315. In the meantime, two victims had passed away between the initial sentencing and resentencing, still awaiting their money.

In light of these changed circumstances and this additional conduct following the initial sentencing, we do not apply a presumption of vindictiveness because there is no reasonable likelihood of vindictiveness on the part of the district court. In the absence of the presumption, and in light of Tanaka and Vilar's failure to

---

[1] Though the district court referenced, in passing, an email sent by Tanaka, it is clear from the record that the district court was not improperly using that email to punish Vilar for Tanaka's conduct, but referencing how that email was indicative of conduct attributable to both.

affirmatively prove actual vindictiveness, we reject the claim of vindictive resentencing. *See Weingarten*, 713 F.3d at 715.

**2.** ***Reasonableness of the Fines***

Tanaka and Vilar also challenge the $10 million fine imposed on each of them. We review all aspects of a sentence, including criminal fines, for reasonableness under a "deferential abuse-of-discretion standard." *United States v. Aldeen*, 792 F.3d 247, 251 (2d Cir. 2015) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). Because Tanaka and Vilar failed to object to the fine below, we review for plain error. *See United States v. Pfaff*, 619 F.3d 172, 174 (2d Cir. 2010).

Guidelines § 5E1.2(a) directs courts to "impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." "If the defendant is indigent, a fine should not be imposed absent evidence in the record that he will have the earning capacity to pay the fine after release from prison." *United States v. Rivera*, 971 F.2d 876, 895 (2d Cir. 1992). Fines may not be imposed on the "mere suspicion that the defendant has funds," *United States v. Rivera*, 22 F.3d 430, 440 (2d Cir. 1994), or "when the possibility of a future ability to pay is based merely on chance," *United States v. Wong*, 40 F.3d 1347, 1383 (2d Cir. 1994) (quoting *United States v. Seale*, 20 F.3d 1279, 1286 (3d Cir. 1994)). It is "ordinarily an abuse of discretion to impose a fine that exceeds a defendant's ability to pay" as established by evidence in the record. *United States v. Salameh*, 261 F.3d 271, 276 (2d Cir. 2001).

We conclude that the fines must be vacated. First, the government concedes that even on plain error review Tanaka's fine should be vacated as it exceeds the statutory maximum. *See* 18 U.S.C. § 3571(b) (specifying maximum). Second, the record of the resentencing proceeding demonstrates that the district court imposed a $10 million fine on each defendant based apparently on the *possibility* of future assets. At the time, Tanaka and Vilar were indigent defendants of over 70 years of age who were represented by court-appointed attorneys. The district court stated that "the residual amount in the Amerindo accounts which [Tanaka and Vilar] claim *could be worth* millions or tens of millions of dollars and that *may*, in fact, *be true*." Vilar App. 319 (emphases added). The district court also commented that "those accounts have not yet been fully valued and so there *may be* a remainder." *Id.* (emphasis added).

Though the government did not ask for an increased fine below, at oral argument it pointed to a January 27, 2016 motion by the receiver suggesting that there is over $38 million left in the receivership account. *See* No. 05 Civ. 5231, ECF No. 584, at 3. Still, much remains unclear. It is not clear whether the district court found on then-available evidence in the record that money would in fact remain, whether Tanaka and Vilar were entitled to any of that money, and whether Tanaka and Vilar could still afford $10 million fines after satisfying their other criminal and civil repayment obligations. These obligations included: for Tanaka and Vilar, criminal forfeiture of $20,578,855.28 and restitution of $26,637,502.69, with joint and several liability; for

Tanaka individually, civil disgorgement of $13,118,693.96 and a civil penalty of $10,000,000; and for Vilar individually, civil disgorgement of $18,572,902.02 and a civil penalty of $10,000,000. *See* Vilar App. 254-59; Suppl. App. 15-20; No. 05 Civ. 5231, ECF Nos. 433, 434 (also imposing some joint and several liability for the individual disgorgement obligations). The record is not at all clear that the defendants are or are likely to become able to pay the $10 million criminal fines. Accordingly, in the interest of fairness, we vacate the criminal fines as to both Tanaka and Vilar and direct the district court to reconsider those fines in light of the defendants' actual ability to pay and to take into account all the aforementioned obligations, including civil obligations.

We have reviewed defendants' remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgments of the district court, except that we **VACATE** the fines imposed and **REMAND** the case for reconsideration of those fines.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk