10-0447-cr
*United States v. Desnoyers*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

—————————————————

August Term, 2010

(Argued: January 13, 2011     Decided: March 14, 2011)

Docket No. 10-0447-cr

—————————————————

UNITED STATES OF AMERICA,

*Appellant*,

—v.—

MARK DESNOYERS,

*Defendant-Appellee*.

—————————————————

Before:

JACOBS, *Chief Judge*, WESLEY, and CHIN, *Circuit Judges*.

A jury convicted Defendant-Appellee Mark Desnoyers on multiple counts, including one count of conspiracy to violate the Clean Air Act and to commit mail fraud in violation of 18 U.S.C. § 371. After trial, the United States District Court for the Northern District of New York (Hurd, *J.*) entered a judgment of acquittal on the conspiracy count citing both factual and legal insufficiency as grounds for its decision. The Government appeals the acquittal ruling. We vacate the judgment of acquittal on the conspiracy count, and remand the case to the district court with instructions to reinstate the jury verdict, enter a judgment of conviction on the conspiracy count, and resentence Desnoyers accordingly.

JUDGMENT VACATED IN PART AND REMANDED.

————————————————

LISA E. JONES, United States Department of Justice, Environment & Natural Resources Division, Washington, DC (Ignacia S. Moreno, Assistant Attorney General; Richard S. Hartunian, United States Attorney for the Northern District of New York; Craig Benedict, Assistant United States Attorney; Colin Black, John Smeltzer, United States Department of Justice, Environment & Natural Resources Division, *on the brief*) (Michael Fisher, EPA Office of Criminal Enforcement, Washington, DC, *of counsel*), *for Appellant.*

JOHN B. CASEY, Dreyer Boyajian LLP, Albany, NY, *for Defendant-Appellee.*

————————————————

WESLEY, *Circuit Judge*:

The United States appeals from a June 19, 2009 order of the United States District Court for the Northern District of New York (Hurd, *J.*) entering a post-verdict judgment of acquittal in favor of Defendant-Appellee Mark Desnoyers on one count of conspiracy to violate the Clean Air Act (the "CAA") and to commit mail fraud in violation of 18 U.S.C. § 371. The district court held that Desnoyers's conspiracy conviction must be set aside because the conspiracy count suffered from both factual and legal defects. We disagree. We therefore VACATE the judgment of acquittal and REMAND the

case to the district court with instructions to reinstate the jury verdict, enter a judgment of conviction on the conspiracy count, and resentence Desnoyers.

BACKGROUND

Desnoyers was licensed in New York to conduct air monitoring at asbestos abatement projects and to document the results of asbestos removal work.  Based on evidence that Desnoyers conducted his work fraudulently and sometimes not at all, the Government charged Desnoyers with (1) conspiring to violate the CAA and to commit mail fraud in violation of 18 U.S.C. § 371; (2) violating the CAA in violation of 42 U.S.C. § 7413(c)(1); (3) mail fraud in violation of 18 U.S.C. § 1341; and (4) three counts of making false statements in violation of 18 U.S.C. § 1001. The jury convicted Desnoyers on all counts except one count of making false statements.

After trial, Desnoyers filed a motion pursuant to Federal Rules of Criminal Procedure 29(c) and 33 challenging his conspiracy conviction.[1] Desnoyers conceded below that

---

[1]    Desnoyers challenged all counts of conviction below. On June 19, 2009, the district court denied Desnoyers's motion to set aside his convictions on the substantive CAA and mail fraud counts and on the false statements counts.  Neither party challenges that ruling on appeal.

the Government introduced sufficient evidence at trial to support the mail fraud object of the conspiracy. Desnoyers argued that his conspiracy conviction is nevertheless defective because the CAA object rendered the conspiracy count both factually and legally defective. The district court agreed that the conspiracy count was factually and legally defective and on June 19, 2009, entered a judgment of acquittal on the conspiracy count.[2]

The Government appeals the district court's entry of a judgment of acquittal on the conspiracy count; the other counts are not at issue on appeal. Accordingly, we need only examine in depth the evidence relevant to the conspiracy count. We pay particular attention to the CAA object of the conspiracy because Desnoyers concedes that the mail fraud object did not suffer from any defects.[3]

The Indictment charged Desnoyers and others with conspiring to violate the CAA and the mail fraud statute based on Desnoyers and his co-conspirators's asbestos

---

[2] The Government moved for reconsideration of the acquittal. On September 14, 2009, the district court denied the Government's request to reinstate the conviction.

[3] Desnoyers thus concedes that he could not have challenged his conviction if the conspiracy count had alleged only a mail fraud object.

abatement work in eight buildings.  The Government conceded after trial, however, that seven of these buildings were not subject to the CAA asbestos removal regulations.  The CAA asbestos removal regulations cover only residences with more than four units and commercial buildings; additionally, buildings must contain "friable" asbestos and at least 260 linear feet of asbestos on pipes or 160 square feet of asbestos on other facility components in order to be subject to the regulations.  *See* 40 C.F.R. §§ 61.141 (defining friable asbestos as "any material containing more than 1 percent asbestos . . . that, when dry, can be crumbled, pulverized, or reduced to powder by hand pressure"), 61.145(a)(1)(i-ii), (4)(i-ii).  When the CAA asbestos regulations apply, specific work practices must be followed during asbestos removal.  *See* 40 C.F.R. § 61.145.  Failure to observe these practices when a building is not subject to the CAA asbestos regulations does not violate the CAA.

The parties dispute whether one building at issue in the conspiracy count — known as 69 Clinton Street — is subject to the CAA asbestos regulations.  Evidence at trial showed that 69 Clinton Street was a commercial property containing friable asbestos.  No witness testified directly,

however, about the exact asbestos measurements at 69 Clinton Street; indeed, these measurements were not taken by an EPA monitor because the pipes had been removed before he visited the site. The Government's evidence on asbestos quantity came from the testimony of multiple witnesses that the 69 Clinton Street project was either "a large" or not "a small." These same witnesses all testified that in the New York asbestos industry, a large project is understood to be a project with sufficient asbestos to fall under the CAA's requirements, whereas a small project is not.[4] Several witnesses explicitly explained that "a large" is understood as a project containing at least 260 linear feet of asbestos on pipes or 160 square feet of asbestos on other facility components — that is, a project with sufficient asbestos to qualify under the quantity requirement of the CAA asbestos regulations.

The district court concluded that the Government failed to show that 69 Clinton Street was subject to the CAA's asbestos regulations because no witness testified directly

---

[4] The "large" and "small" designations arise because New York Code 56 regulates asbestos removal differently based on the size of a building. A "large" building under New York's legal framework is one meeting the size requirements set forth in the CAA regulations. Code 56 still covers "small" projects, but sets forth less restrictive removal requirements.

about the quantity of asbestos at 69 Clinton Street.  The district court reasoned that the testimony at trial was insufficient to show that 69 Clinton Street contained at least 260 linear feet of asbestos on pipes or 160 square feet of asbestos because "the witnesses' opinions as to what constitutes a 'large' project could obviously still fall short of the rule's footage requirements."

Based on the foregoing, the district court concluded that the jury's verdict on the conspiracy count could not stand because the CAA object suffered from a factual defect.  Although a factual defect in one object of a multi-object conspiracy does not ordinarily require a court to overturn a guilty verdict, *United States v. Garcia*, 992 F.2d 409, 416 (2d Cir. 1993), the district court entered a judgment of acquittal on the conspiracy count.  In so holding, the district court found that the ordinary rule for multi-object conspiracies did not apply because "an overwhelming amount of evidence relevant only to the unproved part of the conspiracy may have prejudiced the jury."  *See United States v. Papadakis*, 510 F.2d 287, 297 (2d Cir. 1975).

The district court found in the alternative that a judgment of acquittal was required because the CAA object of

the conspiracy suffered from a legal defect.  The district court reasoned:

> Here, the Clean Air Act objective within Count One suffered from a substantial legal defect because of the inapplicability of the Act's regulatory standards.  Even if the evidence, viewed in the light most favorable to the Government, was sufficient to show that the Clean Air Act applied to the 69 Clinton Street project, it remains undisputed that it was legally impossible for defendant to conspire to violate the Clean Air Act with respect to the remaining seven projects identified in Count One. . . . [T]here were seven instances in which the jury had to consider a legally impossible theory of guilt. Defendant's conviction under Count One may very well have been based upon any one of these seven legally impossible theories.  Accordingly, the weight of the evidence admitted at trial is irrelevant, and defendant's conviction cannot stand.

The court thereafter entered judgments of guilt on the remaining counts and sentenced Desnoyers based on these counts.[5]

The Government filed this timely appeal challenging the district court's entry of a judgment of acquittal as to the

---

[5] Notably, the court did not consider any of the eight projects at issue in the conspiracy count when assessing losses at sentencing.  Additionally, likely as a result of its decision to enter a judgment of acquittal on the conspiracy count, the court did not impose an enhancement pursuant to U.S.S.G. § 2B1.1(b)(2) for an offense involving ten or more victims.

conspiracy count.

**DISCUSSION**

**A.   Standard of Review**

We review a judgment of acquittal notwithstanding a guilty verdict *de novo* and apply "the same standard of constitutional sufficiency as the district court."  *United States v. Heras*, 609 F.3d 101, 105 (2d Cir. 2010).  A defendant challenging the sufficiency of the evidence "bears a heavy burden," *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009), because a reviewing court must sustain the jury's guilty verdict if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

**B.   The Conspiracy Conviction Suffered Neither a Factual Nor a Legal Defect**

Claims of factual and legal defects both challenge the sufficiency of the Government's case, but they do so in distinct ways.  A factual challenge tests the sufficiency of the evidence and requires a court to examine whether a

reasonable jury could find each element of a crime proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319.  A legal challenge, by contrast, questions whether a conviction rests on "a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the evidence."  *Griffin v. United States*, 502 U.S. 46, 59 (1991).  A mistake about the law occurs when a defendant is charged with conduct that is not legally actionable — when, for instance, the charged conduct "is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime."  *Id.; see also Garcia*, 992 F.2d at 415-16.

   The difference between factual and legal challenges is significant because "when disjunctive theories are submitted to the jury and the jury renders a general verdict of guilty, appeals based on evidentiary deficiencies must be treated differently than those based on legal deficiencies."  *Garcia*, 992 F.2d at 416.  "If the challenge is evidentiary, as long as there was sufficient evidence to support one of the theories presented, then the verdict should be affirmed. However, if the challenge is legal and any of the theories

was legally insufficient, then the verdict must be reversed." *Id*. This distinct treatment is appropriate because:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law . . . . When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence.

*Griffin*, 502 U.S. at 59.

Here, Desnoyers asserts that his conspiracy conviction was both factually and legally defective. He contends that the Government did not — and could not — prove that 69 Clinton Street was subject to the CAA asbestos regulations. His first challenge, examining what the Government actually proved, is factual. Desnoyers contends that his second challenge, questioning what the Government could prove, is legal. Notably, Desnoyers does not challenge the CAA object of the conspiracy count in any other respect. He raises no objections regarding the mail fraud object of the conspiracy

count.

*1. Factual Sufficiency*

Desnoyers's factual challenge fails because he disputes just one object of the multi-object conspiracy charged. *Garcia*, 992 F.2d at 416.[6] Desnoyers's concession that the Government proved the mail fraud object of the conspiracy fatally undermines his factual challenge. *Id*. The Supreme Court has made clear that there is "no exception" to the rule that "'[w]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged.'" *Griffin*, 502 U.S. at 56-57 (quoting *Turner v. United States*, 396 U.S. 398, 420 (1970)).

Our Court has previously announced a "caveat" to the general rule that "[w]here a conspiracy has multiple objectives, a conviction will be upheld so long as evidence

---

[6] We will assume that the evidence with regard to 69 Clinton Street was insufficient. That assumption is debatable given that the government is entitled to every favorable inference from the evidence it presented at trial, but for our purposes we need not decide that issue in light of the conceded sufficiency of the evidence with regard to the mail fraud object of the conspiracy count.

is sufficient to show that an appellant agreed to accomplish at least one of the criminal objectives." *Papadakis*, 510 F.2d at 297.  In *Papadakis*, we held that this caveat applies when "an overwhelming amount of evidence relevant only to the unproved part of the conspiracy may have prejudiced the jury." *Id*.  The Government urges us to hold that *Griffin* implicitly overruled the *Papadakis* caveat. *See Griffin*, 502 U.S. at 57.

We need not determine the continuing validity of the *Papadakis* caveat, however, because the caveat does not apply in any event to this case.  Even assuming *arguendo* that the Government failed to prove the CAA object, an overwhelming amount of the evidence at trial was not relevant solely to the CAA object.  Instead, the trial evidence related to Desnoyers and his co-conspirators' abatement work and false representations to clients was relevant to both the CAA object and the mail fraud object.  This evidence supported the government's mail fraud allegation by showing that Desnoyers and his co-conspirators participated in a scheme to use the mail to falsely represent to clients that their abatement and monitoring work complied with state law.

Accordingly, even if valid, the *Papadakis* caveat does not support a judgment of acquittal notwithstanding the verdict here.

   *2.  Legal Sufficiency*

Although Desnoyers labels his second argument a legal challenge, he fails to actually set forth a cognizable legal challenge.  Desnoyers contends that the CAA object of the conspiracy was legally defective because, according to Desnoyers, the Government could not prove that any of the eight projects charged in the conspiracy count, including 69 Clinton Street, were subject to the CAA asbestos regulations.  Desnoyers's purported legal challenge is simply a restatement of his factual challenge — he contends that the Government failed to prove an element of the offense.

The Supreme Court has suggested that a legal defect arises when a court instructs jurors using an incorrect explanation of the law.  *Griffin*, 502 U.S. at 59.  Unlike jurors presented with a factually deficient theory, jurors presented with a mistaken view of the law cannot be presumed to have discovered the legal mistake.  Jurors are fact

finders, not lawyers or judges, and thus "are not generally equipped to determine whether a particular theory of conviction submitted to them . . . fails to come within the statutory definition of the crime."  *Id*.

Our Court applied this principle in *Garcia* when a defendant challenged his conviction for extortion in violation of the Hobbs Act on the grounds that two of the three definitions of extortion provided to the jury did not satisfy the Supreme Court's definition of Hobbs Act extortion.  *Garcia*, 992 F.2d at 415.  In the intervening time between the trial in *Garcia* and Garcia's challenge on appeal, the Supreme Court held in *Evans v. United States*, 504 U.S. 255, 268 (1992), that the relevant extortion statute required the Government to prove a quid pro quo: "'that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts.'"  *Garcia*, 992 F.2d at 414 (quoting *Evans*, 504 U.S. at 268).  Because two of the district court's instructions in *Garcia* did not require the jury to find a quid pro quo, the jury could have convicted Garcia after finding that he committed conduct described in

the errant instructions that was not, in fact, prohibited by the Hobbs Act. *Id.* Given this possibility, our Court overturned Garcia's extortion conviction on the ground of legal defect.

Here, Desnoyers contends that his conspiracy conviction suffered from a similar legal defect because the jury needed to determine whether Desnoyers's conduct fell within the proscriptions of the CAA. Desnoyers's view, if we accepted it, would stretch *Griffin*'s definition of a legal error beyond recognition.[7] Juries are always asked to determine

---

[7] *Griffin* recognized that "legal error" is sometimes used in the sense Desnoyers advocates. *Griffin* explained:

> In one sense "legal error" includes inadequacy of evidence — namely, when the phrase is used as a term of art to designate those mistakes that it is the business of judges (in jury cases) and of appellate courts to identify and correct. In this sense "legal error" occurs when a jury, properly instructed as to the law, convicts on the basis of evidence that no reasonable person could regard as sufficient. But in another sense — a more natural and less artful sense — the term "legal error" means a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the evidence.

*Griffin*, 502 U.S. at 59. *Griffin* expressly clarified that the Court was "using 'legal error' in the latter sense" when describing the type of error that renders a multi-count

whether a defendant's conduct falls within the definition of a crime in the sense that juries must always determine whether a defendant committed every essential element of a crime. *See Jackson*, 443 U.S. at 319. *Griffin*'s use of "fail[ed] to come within the statutory definition" of a crime concerns cases where the statutory definition itself is contested or unclear. *Garcia* was such a case because the jury was presented with alternative definitions of extortion, only one of which actually described conduct within the statutory definition of extortion. *See Garcia*, 992 F.2d at 415.

Unlike *Garcia*, the present case did not involve a mistake *about* the law. The jury was not instructed to apply incorrect legal principles or definitions. Instead, the jury was correctly instructed on the conditions under which the CAA asbestos regulations apply. The jury was then tasked with fact finding: in order to determine whether Desnoyers conspired to violate the CAA, the jury was asked to determine, among other things, whether each property in the conspiracy count was (1) a commercial property or a

conviction invalid. *Id*. Desnoyers, meanwhile, is not.

residential property with more than four units containing (2) a sufficient quantity of (3) friable asbestos. The Government could prove that one of those properties, 69 Clinton Street, was subject to the CAA asbestos regulations by introducing evidence of these three factors.

The fact that the Government may not have established that the properties at issue in the conspiracy count were subject to the CAA asbestos regulations was a factual deficiency in the Government's case, not a legal one. As a result, the district court erred when it characterized the Government's CAA theory as "legally impossible."

In sum, the conspiracy count suffered neither a factual nor a legal defect.

**CONCLUSION**

Based on the foregoing, the district court's decision to set aside the jury verdict was in error. We therefore VACATE the judgment granting the Rule 29 motion and REMAND. The district court is instructed to reinstate the jury verdict, enter a judgment of conviction on the conspiracy count, and resentence Desnoyers accordingly.