11-5194-cr
United States v. Desnoyers

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: December 17, 2012    Decided: February 14, 2013)

Docket No. 11-5194-cr

- - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

- v.-

MARK DESNOYERS,

Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - -x

Before:        JACOBS, Chief Judge, CALABRESI, and
               LEVAL, Circuit Judges.

The United States appeals from a judgment entered in the United States District Court for the Northern District of New York (Hurd, J.) re-sentencing Mark Desnoyers to five years' probation and assessing $45,398 in restitution. Desnoyers was convicted of offenses arising from his malfeasance as an air monitor for asbestos abatement projects in and around Plattsburgh, New York. Desnoyers was initially sentenced to five years' probation (and

restitution of $34,960) after the district court granted his motion under Rule 29 to dismiss the conspiracy charge (Count I). On appeal, we reinstated the conviction for Count I and remanded for re-sentencing. For the following reasons, we conclude that the sentence was procedurally unreasonable; we therefore vacate and again remand for re-sentencing.

RAJIT S. DOSANJH, (Craig A. Benedict, on brief), for Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse New York, for Appellant, United States of America.

JOHN B. CASEY, Dreyer Boyajian LLP, Albany, New York, for Appellee, Mark Desnoyers.

DENNIS JACOBS, Chief Judge:

The United States takes this appeal from the sentence imposed following our reinstatement of a count of conviction dismissed by the district court under Federal Rule of Criminal Procedure 29. The re-sentencing has resulted in imposition of the same term of probation and an increase in restitution of about $10,000.

Desnoyers was convicted by a jury in the United States District Court for the Northern District of New York (Hurd, J.) of offenses arising from his malfeasance as an air

2

monitor for asbestos abatement projects in and around Plattsburgh, New York. The grant of Desnoyers's post-trial motion to vacate Count I--the conspiracy charge--left four substantive violations.

On the government's initial appeal, we reinstated the jury verdict, and remanded for re-sentencing. United States v. Desnoyers ("Desnoyers I"), 637 F.3d 105, 112 (2d Cir. 2011).

On remand, the district court imposed the same five-year term of probation and increased the restitution amount to $45,398. The government now attacks the procedural and substantive reasonableness of the sentence, arguing mainly that the district court improperly excluded new evidence that was not submitted at the initial sentencing. The government also contests the restitution calculation.

For the reasons that follow, we conclude that the sentence was procedurally unreasonable; we therefore vacate and remand to the district court for re-sentencing.

## BACKGROUND

Desnoyers's conviction arose out of his work as an air monitor on ten asbestos removal projects in 2005 and 2006.

3

An air monitor conducts air sampling to ensure that the asbestos was removed properly and that no asbestos fibers remain suspended in the air. See N.Y.S. Indus. Code Rule 56-17.8. The conspiracy count (Count I) that was dismissed post-trial and reinstated after appeal arises from eight asbestos removal projects that Desnoyers conducted together with his codefendants: John Wood; one of Wood's associates, Curtis Collins; and one of Desnoyers's employees, Tom Marble. Wood, Collins, and Marble all testified at trial that abatement at these jobs was performed improperly: The asbestos was ripped out haphazardly causing asbestos fibers to fill the air; the debris was carried out in plastic bags covered in asbestos dust; and chunks of asbestos debris were left in the work area. Marble testified that he never saw Desnoyers take air samples, and Wood testified that Desnoyers assured Wood that the air samples "w[ould] come back clean" immediately after the work concluded. Trial Tr. 316, Sept. 10, 2008. The air samples did, in fact, "come back clean" despite large amounts of loose asbestos littering the properties.

Two other counts of conviction arise from the same "rip and run" pattern: a violation of the Clean Air Act (Count V)

4

at a commercial building in Oneonta, New York, the so-called "Da'Vida" project; mail fraud (Count VI) in connection with a project at the High Peaks Hospice ("Hospice") in Port Henry, New York; and making false statements to the Environmental Protection Agency ("EPA") (Counts XII, XIII, and XIV) concerning two of the projects giving rise to the conspiracy count.

The jury verdict, rendered on September 19, 2008, convicted Desnoyers on Counts I, V, VI, XII, and XIII.[1] The district court granted Desnoyers' Rule 29 motion for a judgment of acquittal as to Count I only. United States v. Desnoyers, No. 06-CR-494, 2009 WL 1748730 (N.D.N.Y. June 19, 2009).

At sentencing on December 18, 2009, the district court calculated Desnoyers's offense level using the fraud section of the United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines"), U.S.S.G. § 2B1.1. The court calculated the loss amounts under U.S.S.G. § 2B1.1(b)[2] as $34,960, which was the contract value of the Hospice and

---

[1] The jury acquitted Desnoyers on Count XIV.

[2] Section 2B1.1 provides that the sentencing range be determined in part by the amount of loss that a defendant causes.

Da'Vida projects plus the estimated clean-up cost for the Hospice; the Da'Vida victim provided no clean-up estimate. This yielded a six-level increase in the base offense level. U.S.S.G. § 2B1.1(b)(1)(C).

The court accepted the Probation Office's recommendations for sentencing enhancements except for a two-level enhancement under U.S.S.G. § 3B1.1(c) for Desnoyers's role as an organizer of conduct involving fewer than five participants. With a total offense level of twenty-one and a criminal history category of I, Desnoyers was subject to a Guidelines range of 37 to 46 months' imprisonment.

A non-Guidelines sentence (five years' probation and $34,960 restitution) was imposed on the grounds that Desnoyers was a "novice in the asbestos removal business," that he had been "duped and misled" by Wood and Collins, Sentencing Tr. 26, Dec. 18, 2009, that he was doing creditable work at the New York State Department of Mental Retardation and Developmental Disabilities helping disabled people get services, and that he had performed similar work at the Advocacy Resource Center.

On the government's appeal, we reversed the grant of the Rule 29 motion and remanded with instructions "to reinstate the jury verdict, enter a judgment of conviction on the conspiracy count, and resentence Desnoyers accordingly." Desnoyers I, 637 F.3d at 112.

Before re-sentencing, the government provided the Probation Office with loss amounts for the victims of the eight projects listed in the reinstated Count I. These loss amounts included victims' payments for the improper asbestos removal and clean-up cost estimates. Most of this information had been provided to the district court for the November 2009 sentencing of Wood, who was also convicted on Count I. However, one estimate was new: One victim, Nancy Page, provided a bid for $19,800. The government also provided new information relevant to the loss amounts for Counts V and VI: The Da'Vida victim provided clean-up bids totaling $43,786, and High Peaks Hospice increased its clean-up total by $2,500. All of this new information submitted by the government would have brought Desnoyers's total loss amount to $213,732.23.

The government also submitted new affidavits from people who knew Desnoyers from the Advocacy Resource Center

and had contacted the government after hearing news reports of Desnoyers's first sentence: Lester Parker and Theresa Garrow. The Parker and Garrow affidavits--which referred to events that took place both before and after the original sentencing--called into question Desnoyers's account of his work at the Advocacy Resource Center. The government also submitted a "joint letter" dated September 16, 2011, sent by employees of the Advocacy Resource Center to the director of Sunmount Developmental Disability Services Organization, where Desnoyers worked as a Medicaid Services Coordinator, detailing problems they had with Desnoyers. The joint letter referred only to conduct that took place after the first sentencing. At a telephone conference on October 11, 2011, the district court ruled that it would not consider evidence of events that took place before the initial sentencing because there was insufficient justification for the government's failure to introduce that evidence at the first sentencing. Telephone Conf. Tr. 14, Oct. 11, 2011. Evidently confused about the import of that ruling, the government did not submit these documents at re-sentencing.

Desnoyers was re-sentenced on October 28, 2011. First, the loss amounts were recalculated, taking into account the

8

reinstated conviction for the eight projects that were the subject of Count I. However, the government's suggested loss amounts were not adopted. Instead, the court decided that Desnoyers's loss amount for Count I "should be no more than the [restitution] amount ordered for co-defendant John Wood," which was $111,259.83. Re-sentencing Tr. 8, Oct. 28, 2011. The court refused, without further explanation, to consider the clean-up estimate that Ms. Page submitted subsequent to Wood's sentencing. After making several other rulings on the loss amount that are not at issue on appeal,[4] the district court calculated the loss amount for Count I as $80,245.83.

Next, the district court "decline[d] to consider additional expense claims, clean-up quotes, submitted by victims with regards to [Counts V and VI] that had not been submitted by the government prior to [Desnoyers's] original

---

[4]     Those rulings were as follows: First the district court said that the proposed loss amount included a bid for clean-up services for the Alexander residence project that was "the highest of multiple estimates related to these expenses." Id. Second, the district court refused to include $3,175 in "payments for background air sampling, pre-abatement air sampling, and environmental air sampling" because that work is required prior to any asbestos removal project--whether legitimate or not. Id. at 10. Third, the district court refused to consider a loss of $3,600 from one project because the building was demolished after the asbestos was removed. Id.

9

sentencing." Id. at 10-11. The resulting total loss amount on all counts was $115,205.83. Again, the court applied all the recommended enhancements except as to Desnoyers's role as an organizer.[5] This resulted in a total offense level of 25 and a Guidelines range of 57 to 71 months' imprisonment.

Despite a Guidelines range that was substantially higher than the one computed at the original sentencing, the district court sentenced Desnoyers to the same five-year term of probation. The district court found that Desnoyers's "conduct is unchanged from that which was evaluated and considered at the time of the original sentence," and that "[i]n the nearly two years since that sentence, the defendant has been in full compliance with the terms and conditions of probation." Id. at 21. The court also considered the factors under 18 U.S.C. § 3553(a), relying on "all of the statements that [it] made on the record at the original sentence." Id.

As for restitution, the district court began with the $34,960 figure from Desnoyers's original sentence, finding that this amount was appropriate for the projects underlying Counts V and VI--without, however, discussing the upward

---

[5] The district court did not explain this decision at the re-sentencing hearing.

10

revisions submitted by the government for those projects. With respect to Count I, the conspiracy count, the court included only the $4,275 that Desnoyers personally received for those projects, reasoning that Desnoyers was "less culpable than his co-defendants and received just a small percentage of the proceeds." Id. at 11. Moreover, the court refused to include any amount received by Desnoyers for background and pre-abatement monitoring. Similarly, the court declined to hold Desnoyers jointly and severally liable for the clean-up costs related to Count I--totaling $69,476--concluding that Desnoyers was responsible only "for his proportionate liability" of those costs, which the court calculated as nine percent, or $6,163,[6] "based on his limited role and his receipt of a limited percentage of the proceeds." Id. at 12-13. Without explanation, Ms. Page's clean-up costs, which had been excluded from the loss calculation, were included in the calculation of restitution.

The government now appeals the sentence, arguing that it is both procedurally and substantively unreasonable.

---

[6] Nine percent of $69,476 is actually $6,252.84.

11

**DISCUSSION**

On appeal, the government first challenges the Guidelines range on the grounds that the district court (1) miscalculated the loss amount by refusing to consider Ms. Page's clean-up costs and the new information concerning the losses suffered in Counts V and VI; and (2) refused to apply the enhancement for being an organizer of the criminal activity. Second, the government contends that it should have been allowed to submit newly discovered character evidence. Third, the government argues that the non-Guidelines sentence was substantively unreasonable. Finally, the government argues that the restitution calculation (1) failed to consider the new submissions for Counts V and VI; (2) should have included payments made for pre-abatement air sampling; and (3) should have imposed joint and several liability for all the Count I losses.

The government's arguments challenge the procedural and substantive reasonableness of Desnoyers's sentence. Procedural reasonableness is reviewed for abuse of discretion. United States v. Cavera, 550 F.3d 180, 187 (2d Cir. 2008).

> A district court commits procedural error where it fails to calculate the Guidelines range . . . ,

12

makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory. It also errs procedurally if it does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact. Moreover, a district court errs if it fails adequately to explain its chosen sentence, and must include "an explanation for any deviation from the Guidelines range."

Id. at 190 (citation omitted) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). "A sentencing court's legal application of the Guidelines is reviewed de novo." United States v. Cossey, 632 F.3d 82, 86 (2d. Cir. 2011).

Substantive reasonableness is also reviewed for abuse of discretion, Gall, 552 U.S. at 51, and is judged in light of the factors listed in 18 U.S.C. § 3553(a)(2), Cavera, 550 F.3d at 195. In considering substantive reasonableness, this Court "take[s] into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." Cavera, 550 F.3d at 190. Given the range of considerations, "the duty of a reviewing court is not to identify the 'right' sentence but, giving due deference to the district court's exercise of judgment, to determine whether the sentence imposed falls within the broad range that can be considered reasonable under the totality of the circumstances." United States v. Jones, 531 F.3d 163, 174 (2d Cir. 2008).

13

**I**

As to the Guidelines calculation, the government argues that the loss amount was miscalculated and that the organizer enhancement should have been applied.

**A**

The government alleges two mistakes in the district court's loss amount calculation: failure to include the Nancy Page clean-up estimate and failure to consider new loss estimates for Counts V and VI. We review the district court's factual findings with respect to the loss amount under U.S.S.G. § 2B1.1 for clear error and its conclusions of law de novo. See United States v. Carboni, 204 F.3d 39, 46 (2d Cir. 2000).

**1**

At re-sentencing, Nancy Page's clean-up costs (the "Page Estimate") were omitted--without explanation--from the loss amount for Desnoyers's reinstated conspiracy conviction. Ms. Page had submitted this estimate after Desnoyers's codefendant Wood was sentenced, so the court did not consider it when it previously calculated the losses for the projects giving rise to Count I.

14

The district court's failure to include the Page Estimate was clear error. The Guidelines require calculation of the loss "based on available information, taking into account . . . the cost of repairs to damaged property." U.S.S.G. § 2B1.1 cmt 3(C)(iii). While the Guidelines require only a "reasonable estimate of the loss," the district court's estimate was not reasonable because no explanation was given for omitting the Page Estimate.

Desnoyers argues that it was proper for the court to refuse to consider the Page Estimate because it was not available at the sentencing of co-defendant Wood. We reject this argument. Since Wood was sentenced under the environmental section of the Guidelines, U.S.S.G. § 2Q1.2, not (as Desnoyer was) under the fraud section, there was no "loss amount" calculation for Wood. The starting point for Desnoyers's loss calculation was the amount of Wood's restitution, which played no role in the length of Wood's sentence. The calculation for Wood's sentencing is therefore inapposite.

We vacate the Count I loss amount calculation and remand with instructions for the district court to consider the Page Estimate in calculating the loss amount for Count I.

15

At re-sentencing, the district court refused to consider new clean-up cost estimates for the Da'Vida and Hospice projects that had not been submitted at the original sentencing.  The district court did not explain its refusal.

"[W]here the government knew of its obligation to present evidence [at the original sentencing] and failed to do so, it may not enter new evidence on remand," absent some justification for failing to present the evidence in the first instance.  United States v. Archer, 671 F.3d 149, 168-69 (2d Cir. 2011).  The government offered no justification for failing to submit the full loss amounts for the Da'Vida and Hospice projects, which were at issue at the initial sentencing.  Under Archer, therefore, the district court did not err in refusing to consider these new estimates at re-sentencing.

The government argues that the district court's refusal was error because it was required to re-sentence Desnoyers de novo.  Typically, the defendant is entitled to de novo sentencing when the court of appeals reverses a conviction, because a change in the "constellation of offenses of conviction" alters the "factual mosaic related to those offenses."  United States v. Rigas, 583 F.3d 108, 115 (2d Cir. 2009) (internal quotation marks omitted).

Thus, <u>de novo</u> sentencing was required in <u>Rigas</u>.  The two defendants had been initially sentenced to fifteen and twenty years' imprisonment (respectively) on each of two counts of bank fraud, to run concurrently.  <u>Rigas</u>, 583 F.3d at 112.  After one of the bank fraud counts was reversed on appeal, the district court "held that it was not required to resentence defendants <u>de novo</u> because [the overturned bank fraud conviction] was a small part of the overall conviction and ran concurrently with [the other bank fraud conviction], which this Court upheld."[7]  <u>Id.</u> at 113.  <u>Rigas</u> did not involve an effort to expand the record with evidence that could have been submitted at the original sentencing.  Rather, the issue was whether the district court erred in concluding that the reversal of one count did not require reconsideration of the overall sentence.  <u>Id.</u>

<u>Rigas</u> prohibits a district court from *automatically* imposing the same sentence on remand after one or more counts are reversed (or reinstated) on appeal.  Here, however, the district court considered the reinstated

---

[7]    The sentencing court in <u>Rigas</u> made an alternative holding that, even if it sentenced the defendants <u>de novo</u>, the sentence would be the same.  <u>Id.</u>  The <u>Rigas</u> court dealt with that holding in a different part of its opinion that is not relevant to this appeal.

17

conspiracy count, calculated a new Guidelines range, and then, exercising discretion, decided to impose the same sentence as it had at the initial sentencing.  The refusal to consider the newly submitted loss amounts for Counts V and VI did not violate the duty to re-sentence <u>de novo</u>.[8]

We therefore conclude that the district court acted within its discretion in refusing to consider the newly submitted loss amounts for the projects underlying Counts V and VI.

---

[8]    The government also cites <u>United States v. Bryce</u>, 287 F.3d 249 (2d Cir. 2002).  In <u>Bryce</u>, the defendant successfully challenged one of his convictions and the case was remanded for re-sentencing.  <u>Id.</u> at 252.  While the appeal was pending, he was indicted and later acquitted for murdering someone who was supposed to testify at his first trial.  <u>Id.</u>  The district court resentenced the defendant <u>de novo</u>, finding that he had murdered the witness and imposing a substantially higher sentence.  <u>Id.</u>  The Second Circuit affirmed, holding that "we have adopted a mandate rule that permits, if it does not require, <u>de novo</u> sentencing unless the mandate specifically limits the scope of the resentencing."  <u>Id.</u> at 253.  Clearly, <u>Bryce</u> is not on point because it does not *require* the court to consider new evidence, but simply permitted it in that case.  Moreover, in <u>Bryce</u>, the main witness for the murder trial did not step forward until after the original sentencing, justifying the government's failure to raise the issue in the first instance.  <u>Id.</u> at 254.

**B**

The government argues that Desnoyers was subject to a Guidelines enhancement under U.S.S.G. § 3B1.1(a) for being an organizer of the criminal activity.  We review a ruling on the organizer enhancement de novo; the underlying fact-finding is reviewed for clear error.  United States v. Paccione, 202 F.3d. 622, 624 (2d Cir. 2000).

At the original sentencing, the district court refused to apply the organizer enhancement because Desnoyers had been "convinced to take part in this criminal endeavor by more criminally predisposed individuals."  Sentencing Tr. 7, Dec. 18, 2009.  At re-sentencing, however, the district court never mentioned the organizer enhancement notwithstanding the reinstatement of a count of conviction that involved eight additional projects.  Although the district court stated at re-sentencing that it "adopt[ed] all of the statements that [it] made on the record at the original sentence," Re-sentencing Tr. 21, Oct. 28, 2011, it did so in the context of its consideration of the factors contained in 18 U.S.C. § 3553(a), not the Guidelines enhancements, which were discussed earlier in the hearing.

19

In refusing to consider the organizer enhancement at re-sentencing, the district court made the error made in Rigas: It failed to consider that the reinstatement of Count I had changed the "factual mosaic related to th[e] offenses [of conviction]" such that it was required to analyze the organizer enhancement anew. 583 F.3d at 118 (internal quotation marks omitted). We remand with instructions for the district court to consider the organizer enhancement in light of the reinstatement of Count I.

**II**

The government argues that the district court violated 18 U.S.C. § 3661 when it refused to consider character evidence that was not submitted prior to the initial sentencing: the Parker and Garrow affidavits and the joint letter.

The statute provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Id.; see also U.S.S.G. § 1B1.4. The word "may" confers

20

discretion in deciding what character evidence to consider. As explained supra, Archer holds that a district court should not consider evidence at re-sentencing that could have been submitted at the original sentencing absent justification. 671 F.3d at 168-69. The district court heard the government's argument that it would have been extremely difficult for it to have found out about Parker, who did not come forward until after the initial sentencing, but nonetheless exercised its discretion in concluding that the government's proffered justification was insufficient. The district court acted within the bounds of its discretion.

The government asserts that the district court's ruling at the October 11, 2011, telephone conference was inconsistent with the written Order issued the following day. Both directives allowed that "[p]re-sentencing submissions may refer to the defendant's acts or relevant events occurring subsequent to December 18, 2009." Order, Oct. 12, 2011. However, at the conference, the district court stated that "these affidavits and the joint letter refer to events mainly before the original sentence." Telephone Conf. Tr. 12, Oct. 11, 2011. This was partly

incorrect--the Joint Letter referred only to events that occurred after the original sentencing. The government moved for reconsideration, hoping to clarify whether it could submit the Joint Letter and affidavits if it redacted the affidavits to remove references to events that took place prior to the initial sentencing; but the district court denied it, referring to the quoted language from the October 12, 2011, Order. The government withdrew the character evidence lest it violate the Order. Although the district court might have been clearer in its ruling at the telephone conference, the Order is itself clear and the government should have submitted the Joint Letter and redacted affidavits. The government is arguing that the district court should have considered evidence that the government never submitted. We affirm on this point.

**III**

We have our doubts as to the substantive reasonableness of a sentence of probation, especially given that the offenses of conviction exposed many persons to prolonged risk of insidious and fatal disease. That the district court did not amend its sentence after we reinstated a

22

conspiracy count based on eight additional abatement projects heightens our discomfort.

However, we decline to rule on the issue of substantive reasonableness at this time because the sentence contains procedural error.   See Gall v. United Sates, 552 U.S. 38, 51 (2007) ("*Assuming that the district court's sentencing decision is procedurally sound*, the appellate court should *then* consider the substantive reasonableness of the sentence." (emphasis added)); United States v. Cavera, 550 F.3d 180, 189-90 (2d Cir. 2008) ("This degree of deference [for substantive review] is only warranted, however, once we are satisfied that the district court complied with the Sentencing Reform Act's *procedural* requirements.").

We therefore leave it to the district court to correct its procedural errors and consider Desnoyers's sentence again before we rule on substantive reasonableness in any further appeal.

**IV**

The Mandatory Victims Restitution Act ("MVRA") requires: "[T]he court shall order restitution to each victim in the full amount of each victim's losses as

23

determined by the court." 18 U.S.C. § 3664(f)(1)(A). We review awards of restitution for abuse of discretion, <u>United States v. Lucien</u>, 347 F.3d 45, 52 (2d Cir. 2003); but a district court lacks discretion under the MVRA "to deny an award of restitution or to award restitution for anything less than the full amount of the victim's losses," <u>United States v. Walker</u>, 353 F.3d 130, 131 (2d Cir. 2003).

**A**

The government argues that the district court erred by refusing to consider newly submitted clean-up costs for the projects underlying Counts V and VI when it calculated the restitution amount.

Under 18 U.S.C. § 3664(d)(5), "[i]f the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief." The government never demonstrated that the victims in Counts V or VI petitioned the court within sixty days after discovering the additional losses; nor did the government demonstrate good cause for failing to

24

include the losses at the first sentence.  We therefore affirm the restitution calculation for Counts V and VI.

**B**

In New York, the person conducting air monitoring for certain asbestos abatement projects is required to take samples before abatement begins ("pre-abatement sampling"), after abatement is complete ("post-abatement sampling"), and, for some projects, while abatement is taking place (so-called "durings").  See N.Y. Indus. Code Rule 56-17.  In calculating the restitution amount, the district court refused to include the payments victims made for "pre-abatement" samplings and "durings," reasoning that these "were services unrelated to the offense of conviction, final clearances."[9]  Re-sentencing Tr. 12, Oct. 28, 2011.

Although there was no finding that the pre-abatement sampling or durings were themselves conducted improperly, they were an integral part of the overall scheme.  An analogous situation was recently presented in United States v. Paul, 634 F.3d 668 (2d Cir. 2011), in which the defendant

---

[9]    The government does not argue that these payments should have been included in the Guidelines' loss amount calculation, as opposed to the restitution calculation.  We therefore limit our discussion of pre-abatement sampling and durings to the restitution issue.

committed securities fraud by artificially raising a stock price through trades among his multiple accounts. Id. at 670. To finance the scheme, he obtained margin loans from banks secured by the artificially valuable stock. Id. Paul argued that the district court should not have imposed restitution in favor of the banks because they were not victims of the securities fraud, the only offense of conviction. Id. at 677. We disagreed and concluded that the banks were victims because they "would not have made the loans to Paul had they known that the collateral for the loans was the stock he manipulated." Id.

Paul's broad view of restitution controls. The pre-abatement sampling was akin to the margin loans in Paul; both were necessary to the overall scheme even though neither was integral to the offense of conviction. The victims here would not have paid for the pre-abatement sampling had they known that the asbestos removal would be fraudulent, just as the banks in Paul would not have made loans if the value of the securities had not been artificially raised.

We therefore vacate and remand with instructions for the district court to include in its restitution calculation

all income received by Desnoyers for his role in the scheme, including that for pre-abatement sampling and durings.

C

Wood was required to pay restitution in the amount of $854,166.06 with the proviso that Wood "shall be jointly and severally liable for $250,302.22 of this restitution with co-defendant, Mark Desnoyers." Wood Sentencing Tr. 19, Feb. 6, 2009. The latter amount related only to the eight projects in Count I (Wood was not involved in the projects underlying Counts V and VI). However, at Desnoyers's re-sentencing, Judge Hurd imposed a restitution amount for the contract values of the Count I projects equal only to the amount Desnoyers received for his work on those projects ($4,275), not the total contract value of all of the Count I projects. Re-sentencing Tr. 11-12, Oct. 28, 2011. Moreover, the court concluded that Desnoyers was personally responsible for only "nine percent" of the Count I clean-up costs--which it calculated as $6,163[10]--not the total clean-up costs of $69,476. Id. at 12-13.

While the district court has discretion to decide whether defendants should be jointly and severally liable

---

[10] Nine percent of $69,476 is $6,252.84.

27

for restitution, see United States v. Amato, 540 F.3d 153, 163 (2d Cir. 2008), the district court did not explain how it arrived at the nine percent figure, or why it held that Desnoyers would be jointly and severally liable for $250,302.22 at Wood's sentencing but abandoned this position at Desnoyers's re-sentencing.  The district court therefore abused its discretion in calculating the restitution amount for the projects in Count I.  We vacate and remand for the district court to calculate the restitution amount for Count I with a full explanation for its reasoning.

V

At oral argument, we asked the parties for letter briefs on the question whether we should assign the case to a different district judge on remand, as we have sometimes done.  E.g., United States v. Schwartz, 500 F.2d 1350, 1352 (2d Cir. 1974).  We decline to take that extraordinary step before affording the district court an opportunity to formulate a sentence after correction of procedural errors.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM in part and VACATE and REMAND in part.** We AFFIRM the following: (1) the district court's refusal to consider newly submitted evidence relating to Counts V and VI; and (2) the district court's refusal to consider the newly submitted character evidence. We VACATE the district court's judgment on the following issues and REMAND for re-sentencing in accordance with this opinion: (1) the district court's refusal to include the Page Estimate in the loss amount for Count I; (2) the district court's failure to consider the organizer enhancement at re-sentencing; (3) the district court's refusal to include payments for pre-abatement sampling and durings in its restitution calculation; and (4) the district court's entire restitution calculation for Count I.