22-2716
*United States v. Won*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of February, two thousand twenty-four.

PRESENT:

> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                          No. 22-2716

JOHN WON,

> *Defendant-Appellant*.*

_____

_____

* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

**For Defendant-Appellant:**   BRIAN A. JACOBS, Morvillo Abramowitz Grand Iason & Anello P.C., New York, NY.

**For Appellee:**   SARAH M. EVANS (Nicholas J. Moscow, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Raymond J. Dearie, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 27, 2022 judgment of conviction is **AFFIRMED** except as to the sentence, which is **VACATED** and **REMANDED** for further consideration consistent with this order.

John Won appeals a judgment of conviction entered following a jury trial in which he was found guilty of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343; conspiracy to commit securities fraud in violation of 18 U.S.C. § 371; securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff; and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h), in connection with his involvement in a fraudulent foreign exchange business called ForexNPower ("FNP") that he ran with his

longtime business partner, Tae Hung ("Kevin") Kang.[1]  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I.    Sufficiency of the Evidence

Won first argues that the district court erred in denying his motion for a judgment of acquittal, which he made after the prosecution rested and renewed after the close of his defense.   He asserts that the government failed to prove his specific intent – a necessary element for each of Won's counts of conviction – and urges us to reverse his convictions for insufficient evidence.   We decline to do so.

"[A] defendant challenging the sufficiency of the evidence that led to his conviction at trial bears a heavy burden, as the standard of review is exceedingly deferential."  *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (citation and internal quotation marks omitted).   Ultimately, "[a] judgment of acquittal is warranted only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt."   *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017) (internal quotation marks omitted).   Moreover, "[t]he law has long recognized that criminal intent may be proved by circumstantial evidence alone," which is

---

[1] Kang was also charged and ultimately pleaded guilty.

particularly appropriate for conspiracies given that they are typically "undertak[en] in secret." *United States v. Heras*, 609 F.3d 101, 106 (2d Cir. 2010) (internal quotation marks omitted). For instance, circumstantial evidence can prove conspiratorial intent by showing "a defendant's association with conspirators in furtherance of the conspiracy" or "his presence at critical stages of the conspiracy that cannot be explained by happenstance." *United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014) (internal quotation marks omitted).

The jury heard more than enough evidence to infer Won's specific intent to participate in the FNP fraud. To begin, witnesses from two of FNP's key partners – online brokerage platform FXCM and introducing broker FXEvolve – testified that Won was their main contact at FNP and that he lied to them in order to establish the critical relationships that propped up FNP's fraud. When FNP first applied to trade on FXCM through an FNP trading entity called Safety Capital Management, Inc. ("Safety Capital"), Won misrepresented that Safety Capital was eligible to do business with FXCM because it was "exempt" from certain licensing regulations. App'x at 615–16. Then, after FXCM banned Safety Capital, specifically due to Kang's involvement, over "excessive losses," *id.* at 621, Won maneuvered to resume trading on FXCM by falsely stating that he had formed a

4

new venture – GNS Capital Inc. ("GNS") – with "new partners," even though Kang was in fact still at the helm, *id.* at 624–25, 636–38. Won then compounded his misrepresentations by falsely attesting that GNS was also exempt from licensing regulations. *See id.* at 646–49; Gov't App'x at 340, 353. Won also made false statements to FXEvolve – which provided FNP with a vital revenue stream in the form of commissions for each trade made in an FNP customer account – when he misrepresented that FNP provided only "educational services" and was not trading on behalf of clients. App'x at 776–77; Gov't App'x at 301–02.

The jury also heard detailed testimony concerning Won's "association with conspirators in furtherance of the conspiracy" through his participation in FNP's predatory seminars. *Anderson*, 747 F.3d at 60 (internal quotation marks omitted). One victim testified about multiple occasions on which Won distributed false brochures and prospectuses, spoke on stage, and at one point even "shouted" a solicitation to potential investors, urging them to "line up" in order to invest. App'x at 511. This victim also explained that Won was in charge of setting up accounts for new investors, and that Kang introduced Won as someone who was "like a brother to him" and whom Kang "had been doing business partnerships [with] for years." *Id.* at 470. At one point Won even handed the victim a

5

business card featuring the false claim that FNP used a "[s]ecret method of generating 10 percent or more [in monthly] profit." *Id.* at 472.

Although Won argued to the jury that he was just an assistant who engaged in only a "handful" of misrepresentations to FNP's business partners and was merely "presen[t]" when Kang misled investors at seminars, Won Br. at 22, there was ample circumstantial evidence from which the jury could reasonably conclude that Won intended to join the conspiracy with full knowledge of its illegal purpose.

## II. Confrontation Clause

Won also argues that his Confrontation Clause rights were violated when the district court permitted two witnesses – Deric Chen, from FXCM, and Dr. Greg Suh, an investor-victim – to testify by two-way video. We review challenges under the Confrontation Clause *de novo*. *See United States v. Vitale*, 459 F.3d 190, 195 (2d Cir. 2006).

In general, "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). But this right is "not absolute." *Maryland v. Craig*, 497 U.S. 836, 850 (1990). Indeed, the Supreme Court has recognized that, in limited

6

cases, a witness may testify by "one-way closed circuit television" – outside the defendant's presence – upon a case-specific finding that such testimony is "necessary to further an important state interest." *Id.* at 852, 857 (holding that one-way video testimony was permissible in that case to protect a child victim of sexual abuse from the trauma of testifying in front of her abuser). In the wake of *Craig*, we recognized another narrow exception for testimony by two-way video in *United States v. Gigante.* 166 F.3d 75, 81 (2d Cir. 1999) (explaining that the "*Craig* standard" does not apply in the case of "two-way" video). There we held that a witness could testify by two-way video – without offending a defendant's confrontation right – "upon a finding of exceptional circumstances . . . when [video testimony] furthers the interest of justice." *Id.* Based on that standard, we found that a witness with a "fatal illness" who was "participat[ing] in the Federal Witness Protection Program" could testify by two-way video within the confines of the Confrontation Clause. *Id.*[2]

Applying *Gigante* to the facts here, we find that exceptional circumstances likewise justified the use of two-way video testimony against Won. At the time

---

[2] Though Won suggests that *Gigante* was wrongly decided, we have never overruled it or deemed it abrogated. *See United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004) ("[W]e . . . are bound by the decisions of prior panels until such time as they are overruled either by an *en banc* panel of our Court or by the Supreme Court.").

of Won's trial in November 2021, the world was in the midst of a pandemic, prompting the Chief Judge of the Eastern District of New York to extend the court's "national emergency" protocols as new strains of the virus emerged that were potentially vaccine-resistant. Gov't App'x at 39–44. Chen lived in Hong Kong and would have had to quarantine for three weeks after returning from the United States. Suh lived in South Korea and was the caretaker for his seventy-seven-year-old mother; live, in-person testimony would have required Suh to abandon his mother for weeks while potentially exposing her to COVID upon his return. Moreover, both witnesses were beyond the court's subpoena power and represented that they would not testify in person, even if the government were to bear the full cost of travel. Finally, the district court used procedures to ensure the protection of Won's confrontation rights, including by setting up large screens that allowed the jury to see the witnesses and also allowed the witnesses to see the attorneys and Won himself. Though two-way video "should not be considered a commonplace substitute for in-court testimony," we are persuaded that "exceptional circumstances" justified such video testimony here. *Gigante*, 166 F.3d at 81.

In so holding, we reject Won's argument that *Gigante* is strictly limited to

8

cases of "unavailability" under Federal Rule of Evidence 804(a), such as when a witness is unable to testify due to their own "infirmity" or "physical illness." Fed. R. Evid. 804(a). To the contrary, *Gigante* itself looked to factors beyond the compass of Rule 804(a) when it stressed that the witness was unavailable due to both his "fatal illness *and* [his] participation in the Federal Witness Protection Program" – the latter of which does not bear on the Rule 804(a) standard for "[u]navailability." *Gigante*, 166 F.3d at 81 (emphasis added). Moreover, we have held that *Gigante* permitted two-way testimony during the pandemic in part because a witness had to care for elderly relatives, which is again a factor not found in the Rule 804(a) analysis. *See United States v. Patterson*, No. 21-1678, 2022 WL 17825627, at *4 (2d Cir. Dec. 21, 2022). By its own terms and its subsequent application, *Gigante* thus extends to other case-specific findings of "exceptional circumstances" beyond the rigid confines of Rule 804(a).

## III.  Jury Instructions

Won also contends that the district court erred in administering a "conscious avoidance" instruction to the jury with respect to each of his counts. We review such challenges *de novo*. *See United States v. Aina-Marshall*, 336 F.3d 167, 170 (2d Cir. 2003). "[A] conscious avoidance instruction may be given only

(i) when the defendant asserts the lack of some specific aspect of knowledge required for conviction, and (ii) the appropriate factual predicate for the charge exists, *i.e.*, the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Id.* (citation and internal quotation marks omitted). Defendants challenging the existence of that factual predicate face a "heavy burden," as we will affirm so long as "*any rational trier of fact*" could have found conscious avoidance beyond a reasonable doubt. *Id.* at 171 (internal quotation marks omitted).

Won argues that the government failed to establish the necessary "factual predicate" because there was "no evidence" that Won was aware of a "high probability" that Kang was defrauding investors. Won Br. at 42. The trial record belies that contention. Won was well aware that Safety Capital was losing money, to the point that Won had to form an alter ego entity (GNS) just to keep trading with FXCM after Safety Capital was kicked off the platform. At the same time, Won attended seminars and distributed materials – including his own business card – proclaiming that FNP used a "[s]ecret method of generating 10 percent or more [monthly] profit" and could turn a $10,000 investment into $1.5

10

million in three years.   App'x at 463, 472.   In light of this evidence, a rational juror could well have found that Won consciously avoided learning the fraudulent truth underpinning FNP.[3]

## IV.   Rule of Completeness

Next, Won contends that the district court abused its discretion when it precluded Won from introducing portions of his deposition under Federal Rule of Evidence 106, known as the rule of completeness.   We review such evidentiary decisions for abuse of discretion.   *See United States v. Williams*, 930 F.3d 44, 58 (2d Cir. 2019).   Though Rule 106 permits the introduction of omitted portions of a statement (including those made during a deposition) to "explain" or provide "context," the completeness doctrine does not "require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages."   *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (internal quotation marks omitted).

---

[3] We also reject Won's contention that the district court committed plain error by failing to "make clear" that the conscious avoidance instruction could not be applied to Won's aiding-and-abetting charges or used to prove Won's intent to participate in a conspiracy.   Won Br. at 44.   The district court's instructions were accurate, and Won cites no case in which we found error merely because a district court failed to give a gratuitous reminder that conscious avoidance should not be used when assessing intent.   *See United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004) ("We typically will not find [plain] error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court." (internal quotation marks omitted)).

Won argues that the district court should have allowed him to introduce three excerpts from his deposition pursuant to Rule 106.   Because none of these excerpts explained or provided context for the admitted portions, the district court was well within its discretion to exclude them.   For instance, Won contends that he should have been permitted to introduce deposition testimony that he was not aware that a specific investor's check had been deposited into an FNP bank account used to distribute proceeds to the conspirators.   But that testimony was not relevant to the admitted portion of the deposition, in which Won conceded that he ultimately controlled that bank account and was a signatory on it.   Nor was his testimony that he did not trade in customers' individually managed accounts relevant to his admitted testimony that he was CEO and president of GNS, or that he had access to a different GNS-managed account of "pooled" investor funds.   App'x at 1274, 1276–77.   Lacking any clear relevance to the admitted portions, these omitted segments were properly excluded.

## V.   Expert Testimony

Nor are we persuaded by Won's challenge to the district court's admission of expert testimony explaining regulations on the foreign exchange market.   As with other evidentiary rulings, we review this challenge for abuse of discretion,

12

reversing only if we find "manifest error." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). Won argues that it was improper to admit testimony from Daniel Driscoll – who testified about the foreign exchange market's license and registration rules, proficiency exam requirements, and advertising regulations – because it invited the jury to find Won guilty (or otherwise disfavor him) based on his uncharged failure to comply with those rules. We cannot agree. As this Court has already held, references to regulations are not "improper" when the district court provides a "limiting instruction" and when the "purpose" of the reference is to explain the basis for a defendant's misconduct, as opposed to "suggest[ing] to the jury that it could find the defendant guilty simply by reason of his violation of the regulation." *United States v. McElroy*, 910 F.2d 1016, 1023–24 (2d Cir. 1990).

Here, the purpose of Driscoll's testimony was to explain how Won's misrepresentations to FXCM and FXEvolve furthered FNP's fraudulent business, and the district court gave several limiting instructions to cabin the jury's use of that evidence. It was therefore "well within the court's discretion to allow the evidence." *McElroy*, 910 F.2d at 1024.

## VI. Speedy Trial

Won next argues that his case should have been dismissed with prejudice because his trial was conducted in violation of his Sixth Amendment guarantee of a speedy trial. A "constitutional speedy trial right claim is governed by the four *Barker v. Wingo* factors: '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *United States v. Abad*, 514 F.3d 271, 274 (2d Cir. 2008) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Though the first factor – the forty-two-month delay until Won's trial – favors Won, the rest do not. If anything, the second factor favors the government, as the delay was attributable not to governmental obstruction but rather to joint scheduling requests, Won's motion for severance from Kang, and Won's insistence that Kang go to trial first. The third factor likewise favors the government, given that Won did not demand a speedy trial or otherwise raise the issue below. The final factor is neutral, as Won was not prejudiced by any delay, since he was not incarcerated pretrial and the government faced similar challenges in preparing for trial in the midst of the pandemic. On balance, Won cannot establish that his Sixth Amendment right was violated.

## VII. Restitution

Finally, Won argues that the district court should have ordered him to pay restitution on a joint-and-several basis with Kang.   The government concedes that this was error and joins Won's request that we remand for resentencing.

Generally, "[w]e review awards of restitution for abuse of discretion." *United States v. Desnoyers*, 708 F.3d 378, 389 (2d Cir. 2013).   Because Won "fail[ed] to object to . . . the order of restitution in the court below, we review his arguments on appeal for plain error."   *United States v. Nucci*, 364 F.3d 419, 421 (2d Cir. 2004). This requires a showing that there was an error that was plain and that the error affected his substantial rights as well as the fairness, integrity, or public reputation of the judicial proceedings.   *See id.*

Here, the district court did not initially order Won and Kang to pay restitution jointly and severally.   At the request of Kang's counsel – and without a similar motion from Won – the district court amended Kang's judgment to impose restitution jointly and severally with Won.   The district court did not amend Won's judgment and offered no explanation for the resulting discrepancy in its treatment of the two co-defendants.

We agree that this was plain error.   As is well established, a district court

abuses its discretion when it fails to explain discrepancies in restitution judgments. *See Desnoyers*, 708 F.3d at 390. This error also affected Won's substantial rights and the fairness of judicial proceedings, as it required Won to pay his restitution award on arbitrarily harsher terms than his co-defendant. *See Nucci*, 364 F.3d at 421. We therefore vacate Won's sentence and remand so that the district court may either amend Won's judgment to impose joint-and-several liability or provide an explanation for the mismatch.

\* \* \*

We have considered Won's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of conviction except as to Won's sentence, which we **VACATE** and **REMAND** to allow the district court to reconsider Won's restitution obligation.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

16